HENRY G. FARBER, Respondent, v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, November 13, 1888.

Damages: SERVANT'S TORTIOUS ACT. A master is not liable for the tortious act of his servant, done while in the performance of his servient duties, unless the act itself pertain to the service for which he is employed. The mere fact that the act is done by the servant with the intention of serving his master, is not sufficient to bring it so within the scope of his employment.

*Appeal from the St. Louis City Circuit Court.*—HON. SHEPARD BARCLAY, Judge.

REVERSED AND REMANDED.

*Henry G. Herbel,* for the appellant.

The instruction for a non-suit should have been given: Because the evidence did not show that the act complained of was within the scope of the brakeman's authority. *Marion v. Railroad,* 8 A. & E. Ry. Cas. 178 ; *Coal Co. v. Herman,* 86 Pa. St. 419 ; *Eaton v. Railroad,* 57 N. Y. 382 ; *Robertson v. Railroad,* 22 Barb. 91 ; *Whitehead v. Railroad,* 22 Mo. App. 63 ; *Snyder v. Railroad,* 60 Mo. 419 ; *McKeon v. Railroad,* 42 Mo. 87 ; *Jackson v. Railroad,* 87 Mo. 431 ; *DeCamp v. Railroad,* 12 Ia. 348 ; *Railroad v. Downey,* 18 Ill. 260. The very appellation by which this class of servants is designated repels the implication of any such

authority. Their duty, as their name imports, is to attend to the brakes. Instruction number one given by the court of its own motion is erroneous, because it authorizes the jury to determine whether defendant's brakeman was "engaged at the time in the control and running of the train" without a word of evidence on which to base such a finding. *Coal Co. v. Heeman*, 86 Pa. St. 419. And in the latter clause thereof assumes that the brakeman had the authority to eject plaintiff's son from the train and was under a legal obligation to exercise ordinary care in so doing.

*George A. Castleman* and *D. Castleman Webb*, for the respondent.

The only point made by the appellant is that "the evidence did not show that the act complained of was within the scope of the brakeman's duties." "Their duties, as their name imports, is to attend to the brakes. The conductor, if any person, is the agent to whom this duty is assigned, and the evidence shows that there was one such on this train." Now, freight trains do not carry passengers, and a conductor on a freight train has nothing to do with passengers. The court below instructed the jury that if the train was a freight train, "then the plaintiff's son had no right to ride thereon, with or without the consent or sufferance of the employes of the defendant in charge of the train." A conductor on a freight train would have no greater right to remove a passenger, or a trespasser, than a brakeman. If the conductor can the brakeman can. *Brown v. Railroad*, 66 Mo. 588; *Perkins v. Railroad*, 55 Mo. 212; *Isabel v. Railroad*, 60 Mo. 480; *Hicks v. Railroad*, 64 Mo. 430; *Lillis v. Railroad*, 64 Mo. 475. Now, there is no distinction made by our supreme court between the conductor of a train and any other employe engaged in the control and running of the train. The statute giving conductors the right to expel passengers is "if any passenger shall refuse to pay his fare, or shall behave in an offensive manner, or by repeated violation of the rules

of the company, it shall be lawful for the conductor of the train and servants of the corporation to put him off," etc. Here the statute uses the general term, "servants of the corporation." *Perkins v. Railroad*, 55 Mo. 214.

ROMBAUER, P. J., delivered the opinion of the court.

This action was brought March 17, 1887, by the plaintiff to recover for the loss of service of his minor son, who was run over and seriously injured by one of defendant's freight trains June 29, 1883.

The plaintiff's case stands on the boy's testimony, who was at the date of the accident nearly sixteen years old. His version of the occurrence, so far as the facts bear upon the main question involved in the case, was substantially as follows: That he and another lad about his age, at about nine o'clock on the night of the twenty-ninth of June, 1883, got on one of defendant's freight trains which was standing in its Jefferson avenue yards in this city and about to start westward, and into what is known as a "stock car," which was loaded with lumber, through a hatchway or opening in the top thereof called a "man-hole" and secreted themselves therein for the purpose of stealing a ride to Kirkwood, Mo.; that after the train started a brakeman came along the top of the car in which they were riding, and detected them there, with their shoes off; he asked them where they were going and they told him "to Kirkwood;" he then demanded money of them and as they had none, he ordered them to get off the train; they objected to doing this because the train was moving too rapidly, but nevertheless began to do so, when the brakeman stepped on witness' fingers as he was going down the ladder at the side of the car, thereby causing him to relax his hold thereon and fall to the ground and have one of his feet crushed by the wheels of the cars; that the train was at the time moving at a rate of from eight to ten miles an hour, and neither slacked nor

stopped at the station of Webster, near which the accident occurred until after he was run over, when upon his outcry the train did stop and he was picked up and taken to the next adjoining station; that he did not tell the conductor how the accident happened, nor did he complain to the company at any time prior to the institution of this suit, which as above seen was nearly four years thereafter.

Upon the close of the evidence the plaintiff asked an instruction in the nature of a demurrer to the evidence, which was refused.

The defendant gave evidence tending to show that all the brakeman did was to order the boy to leave the train, that the train was at that time moving at a rate of from two to three miles an hour, and that it stopped at Webster station, where the boy received his injuries, and that the train was provided with a conductor, who was in charge of the train; the theory of the defense being that the boy got off the train when ordered to do so, and received his injuries by trying to mount the train when it started.

At the close of the entire case the defendant again offered an instruction of non-suit, which was again refused. The jury found a verdict for plaintiff.

The only substantial error complained of is the refusal of these instructions, the defendant contending that there is no substantial evidence in the case, showing or tending to show that the brakeman's acts were within the scope of his employment.

As the boy was wrongfully upon the train and admittedly a trespasser, and as the train was not one designed for the transportation of passengers the question of defendant's liability has to be determined, not by the rules applicable to common carriers, but must rest on the principles of the law of agency. We so decided in a similar case in *Whitehead v. Railroad*, 22 Mo. App. 63.

The mere fact that a tortious act is committed by a servant while he is actually engaged in the performance

of the service cannot make the master liable.   Something more is required.   It must not only be done while employed, but it must pertain to the duties of the employment.   That has been repeatedly decided in this state.   *McKeon v. Railroad*, 42 Mo. 83 ; *Snyder v. Railroad*, 60 Mo. 419 ; *Jackson v. Railroad*, 87 Mo. 430.

The cases of *Marion v. Railroad*, 8 Am. & Eng. Ry. Cases, 178, and *Towanda Coal Co. v. Heeman*, 86 Pa. St. 418, are in point.   Both are cases wherein trespassing boys were driven from trains by brakemen and received serious injuries in their attempts to dismount, and the courts held that under the rule of law above stated the company could not be held liable.   In the former case the trial court sought to hold the company liable on some theory of ratification, as the employe's purpose was to serve his employer, but the supreme court held that this could not be done, and that it makes no difference whether it was the mere negligent performance of an act for the supposed benefit of the master, as long as it was not done in performance of duties assigned to the servant.   Judge ADAMS, in delivering the opinion of the court, said :   "The rule is familiar that an employer is liable for the torts of an employe only where they are committed in the course of his employment.   The difficulty has been to determine what acts should be deemed within the course of his employment.   If in this case the conductor had forced the plaintiff from the train while in motion and while crossing a bridge, the act very clearly would, under the evidence, be deemed to be in the course of his employment, and that, too, even if it were shown that he had been expressly instructed to eject no person from the train while in motion, and especially when crossing a place as dangerous as a bridge.   In one sense the specific act would not be in the course of his employment, but his general employment to remove trespassers from the train would be sufficient to render the company liable.   But it appears to us that the act of an

employe of a railroad company, in removing a trespasser from a train, cannot be considered the act of the company unless he was employed generally to remove trespassers or specifically to remove the particular trespasser. * * * Where the employe is not acting within the course of his employment the employer is not liable, even for the employe's negligence, and the mere purpose of the employe to serve his employer has no tendency to bring the act within the course of his employment." This we hold to be a correct statement of the rule and its qualifications.

From the mere showing that the servant in this case was head brakeman, no legal inference can arise that it was within the scope of his duties or employment to eject intruders from the train. The name of the servant indicates (even if we were not bound to take notice of a fact so commonly known) that the duty ordinarily assigned to him is to assist in braking the train. If other duties were assigned to brakemen on this train, or by this company, or if they performed other duties with the company's knowledge or sanction, it was for the plaintiff to show that fact. It is not controverted that this train had a conductor who had general charge of it.

Nor was there any evidence to hold the company on the theory of ratification, even if such theory under the circumstances was admissible, since there is no evidence that the manner in which the accident was brought about came to the knowledge of the company, or any of its officers, prior to the institution of this suit.

The demurrer to the evidence should have been sustained. Reversed and remanded. All concur.