## WALKER v. THE HANNIBAL & ST. JOSEPH RAILROAD COMPANY, *Appellant.*

### Division Two, May 8, 1894.

1. **Master and Servant:** TORT OF SERVANT: MASTER'S LIABILITY FOR. A master is not liable for the tortious act of his servant, unless committed in the course of the servant's employment.

2. **Railroad:** TORT OF SERVANT: NEGLIGENCE. A railroad company is not liable for injury to one struck by a drill thrown from a car by the baggage man and which was regularly carried by him gratuitously for plaintiff without the company's knowledge.

3. ———: SERVANT'S AUTHORITY: NEGLIGENCE. A railroad company may deny authority of a station agent to have articles put on the baggage car and carried free by a baggage man and thrown off near the place they were used, they not being sent as freight.

4. ———: ———: NOTICE TO COMPANY. Notice to a conductor who has no authority over the baggage man on a train that he is in the habit of carrying drills for a lime company and putting them off near its quarry is not notice to the company.

*Appeal from Louisiana Court of Common Pleas.*—HON. E. M. HUGHES, Judge.

REVERSED.

*Spencer & Mosman* and *Fagg & Ball* for appellant.

(1) In order to render the master liable for the negligent act of his servant, the act of the servant must

be done in the course of his employment. The master is never liable for the acts of the servant, which are not connected with the particular service he has employed the servant to perform. If the negligence occurred while the servant was doing something inconsistent with his duty to his master, the master can not be held liable. The act must pertain to the duties which he was employed to perform. If the intention of the servant in carrying and delivering the drills, in doing which the negligence occurred, was to serve himself, or to serve another than the master, the master is not liable. *Garretzen v. Duenkel*, 50 Mo. 104; *Cousins v. Railroad*, 66 Mo. 576; *Mitchell v. Crassweller*, 13 Com. Ben., 236; *McClenaghan v. Brock*, 5 Rich. (S. C.) 17; *Stevens v. Woodward*, 6 Q. B. Div. 318; *Coal Co. v. Heeman*, 86 Pa. St. 418; *Farber v. Railroad*, 32 Mo. App. 381; *Jackson v. Railroad*, 87 Mo. 430; *Murphy v. Caralli*, 3 Hurls & C. 462; *Foster v. Bank*, 17 Mass. 479, *loc. cit.* 508. (2) The courts have held that no recovery can be had against the master under these precise circumstances. *Cunningham v. Railroad*, 31 Upper Can. Q. B. 350; *Walton v. Car Co.*, 139 Mass. 556. (3) A master has a right to determine himself, and assign to his servants their duties, and no assumption by a servant of duties not assigned to him, will bring those duties within the course of his employment, as defined by the master. *Marion v. Railroad*, 59 Iowa, 428; *Cunningham v. Railroad*, 31 Upper Can. Q. B. 350; *Murphy v. Caralli*, 3 Hurls & C. 462; *Oil Creek R'y v. Keighron*, 74 Pa. St. 316; *McDaniel v. Railroad*, 8 S. Rep. 41; *Flower v. Railroad*, 69 Pa. 210; *Sherman v. Railroad*, 72 Mo. 62; *Railroad v. Harrison*, 48 Miss. 112. (4) It is perfectly clear that James, the train baggage man, was a special agent, appointed for a particular purpose of a very restricted limited nature, and that plaintiff knew it, and the case falls within and is governed by the rule

applicable to special agents. "Whoever deals with an agent constituted for a special purpose, deals at his peril when the agent passes the precise limit of his power." 2 Kent Com. [7 Ed.], p. 793; Noyes' Maxims, chap. 44; 1 Parsons Cont., 41; Tate v. Evans, 7 Mo. 420; Wheeler v. Given, 65 Mo. 92, 93; Maybry v. Railroad, 75 Mo. 492; Tucker v. Railroad, 54 Mo. 81; Choteau v. Filley, 50 Mo. 174. It is not a question of scope of the train baggage man's duty, but the question is, did he exceed or transcend his powers and authority? If he did, the defendant is not bound. Oxford v. Peters, 28 Ill. 434; Golden v. Newbrand, 52 Iowa, 59. (5) As James was a special agent whose duties and course of employment only authorized him to act for the defendant as the custodian en route of the baggage of its passengers, and as these drills did not belong to any passenger, and clearly were not baggage, the law would hold that the baggage man was acting for himself and not the defendant, in receiving, carrying and delivering these drills. Satterly v. Groat, 1 Wend. 272; Bard v. Yohn, 26 Pa. St. 482; Brown v. Purviance, 2 H. & G. (Md.) 316; Borden v. Bolt, 7 D. & L. 87; Sygo v. Newbold, 24 Eng. L. & Eq. 507; Burke v. Shaw, 59 Miss. 443; Marrier v. Railroad, 31 Minn. 351; Rayner v. Mitchell, 2 C. F. D. 355. (6) James swears that he carried the drills "as a pure accommodation to the lime company," and in this he is fully corroborated by plaintiff. It was a purely voluntary act on the part of James, outside the course of his employment, for the consequences of which the law would not hold the master liable, and certainly the law would not hold the master liable to the party who had induced the servant to perform for him a gratuitous act without the master's consent. Olive's Adm'r v. Marble Co., 103 N. Y. 292; Choteau v. Steamboat, 16 Mo. 216; Hoar v. Railroad, 70 Me. 65;

*Snyder v. Railroad*, 60 Mo.. 413. (7) Under the evidence in this case, the law will hold that James, in receiving, carrying and delivering these drills was *pro hac vice* the servant of the plaintiff, and not of this defendant. *Railroad v. Keighron*, 74 Pa. St. 316; *Paint Co. v. Conlon*, 92 Mo. 229; *Adams v. Cost*, 65 Md. 264. (8) Where A surreptitiously employs the servant of B to perform for him a service, the law conclusively presumes that in that service he is the agent of A alone, and A will not be heard to say that the man was B's agent in the performance of the service. *Fitzsimmons v. Express Co.*, 40 Ga. 330; *Robinson v. Jarvis*, 25 Mo. App. 426. (9) Walker knew that the carriage of said drills was inconsistent with the duty of a train baggage man; was in violation of defendant's rules, and was in fraud of its interests and business, and the case falls clearly under the decision in *Snyder v. Crawford*, 74 Mo. App. 8; *Desteiger v. Dallington*, 17 Mo. App. 288; *Lewis v. Stack*, 27 Mo. App. 119.

*Harrison & Mahan* for respondent.

(1) The defendant should have shown plaintiff ordinary care. It was defendant's duty to maintain the place where he put the letters on its train in a reasonably safe manner, and, having failed to do so, defendant is liable. *Moore v. Railroad*, 84 Mo. 487; *Bennett v. Railroad*, 102 U. S. 577; *Holmes v. Railroad*, 4 Ex. L. R. 254; 1 Thompson on Negligence, 313; Wharton on Negligence, sec. 821. (2) The inference is irresistible, that defendant acquiesced in, and consented to, its baggage men carrying and delivering the drills; and under such circumstances the defendant is clearly liable for the negligence of its baggage man. *Reilly v. Railroad*, 94 Mo. 600; *Carpenter v. Railroad*, 21 Am. & Eng. R. R. Cases, 331; *Railroad v. Johns*, 34 Am. &

Eng. R. R. Cases, 480; Bishop on Non-Contract Law, sec. 609; Cooley on Torts, pp. 538, 539; *Edwards v. Thomas*, 66 Mo. 468; Wharton on Agency, secs. 476 and 477; *Brannock v. Elmore*, 114 Mo. 55; 16 Am. & Eng. Encyclopedia of Law, 791, and cases cited. (3) "Proof of the notoriety of a fact is competent to show notice or knowledge of it by another." *Crane v. Railroad*, 87 Mo. 588; *Johnson v. Hurley*, 22 S. W. Rep. 492; *Gurley v. Railroad*, 93 Mo. 451; *Barry v. Railroad*, 98 Mo. 63; *McGee v. Railroad*, 92 Mo. 220; Wood on Master and Servant, sec. 401, p. 776; Lawson on Custom, 41 and 42. (4) "He who has knowledge of facts sufficient to put him upon inquiry, is chargeable with notice of the fact which inquiry would disclose." *Eyerman v. Bank*, 84 Mo. 408; *Mason v. Black*, 87 Mo. 342; *Meier v. Blume*, 80 Mo. 184; *Fellows v. Wise*, 55 Mo. 413. (5) Mr. Beeler, one of defendant's executive officers, testified that conductor Hance had full charge of the train, except of express matters. Now, the knowledge of the conductor was the knowledge of defendant. He represented the company, and the information he received while in the line of his duty, was information given to the company. *Smith v. Railroad*, 92 Mo. 369; *Hoke v. Railroad*, 88 Mo. 360; *Holden v. Bank*, 72 N. Y. 286; *Whithead v. Railroad*, 99 Mo. 271; *Mahill's Mfg. Co. v. Camp*, 49 Wis. 130; 1 Redfield on Railways [5 Ed.], 537, 538. (6) The authority of both, agent Stover and baggage man James, was apparent and binding on defendant. Evans on Ag., 594–606; Wharton on Cont., secs. 90, 130, 269; *Express Co. v. Schlessinger*, 75 Pa. St. 246; Evans on Ag., 193, note.

BURGESS, J.—Action to recover damages on account of personal injuries sustained by plaintiff by

reason of the alleged negligence of the servant of defendant.

The evidence showed that the plaintiff was the general foreman in charge of the works of the Hannibal Lime Company, at Bear Creek, a small station on the line of defendant's road, six miles west of Hannibal; that the office of the Lime Company was in that city; that plaintiff had charge of all its business, including the shipment of lime from Bear Creek, and had been such foreman for five or more years previous to the injury; that he was accustomed to send iron drills, used for getting out the rock to make lime, to a blacksmith at Withers' Mills, two miles west of Bear Creek, to be sharpened. The drills were from five to six feet in length, weighing some thirteen pounds each. They were sometimes sent on wagons, sometimes on hand cars and sometimes in defendant's baggage car. No instructions or directions were given as to the manner in which the drills were to be returned by the blacksmith. The blacksmith at Withers' Mill, Jacob Stover, was postmaster at that place, and was also defendant's ticket agent and had been for about fifteen years before the accident. After the drills were sharpened by Stover he would take them from the shop to the station house and lay them down on the railroad platform in front of the depot; they were usually wired three together. He would then tag the drills "Hannibal Lime Company, Bear Creek Station," or if not so tagged, he would mark them with chalk, in the same way. He would then, upon the arrival of defendant's passenger train from the west, put the drills in the baggage car, in charge of defendant's baggage man, who would receive them, place them in the car and deliver them to the Lime Company at Bear Creek Station. If the train stopped, he would drop them off at the platform, and if it did not stop, he would throw

the drills off anywhere east of the rock chute. This way of delivering the drills the baggage man had continued for ten or fifteen years before and up to the day of the injury. It was a custom of long standing, and the drills were so delivered as frequently as from three to five times per week, and often every day in the week during this long series of years. Each retiring baggage man would hand down the habit and custom to his successor.

The evidence showed that the plaintiff was in the habit of communicating with the managing officers of his company at Hannibal by letters which he would throw into the baggage car as the train went by, and on the day of this accident he went down to the track in order to put a letter which he.had written his employers in Hannibal on the train, as he had been accustomed to do; that, as the train came in, he was standing with one foot on the rail of the side track nearest the main line, with the letter in his hand; when the train got within two hundred feet of him, he noticed the ends of the drills projecting out of the open door of the baggage car, saw them raised up, and saw the baggage man look out of the door and down the track towards the point where he was standing, and then withdraw himself inside the car. Anticipating that the drills were to be thrown off, plaintiff at once left his position by the side of the track and ran northward to get out of the way, and he had gotten about fifteen feet from the point where he was standing, when he was hit with the drills.

The baggage man testified that he looked out of the door of the car, and down along the track, and seeing plaintiff standing by the side of the track, stepped back into the car, and bracing himself swung the drills with all his might from the train as far as he could throw them, for the purpose of avoiding any possibility

of striking plaintiff; that he did not see plaintiff move
from the position where he had first seen him, and did
not know that he had left that position; that knowing
the position where plaintiff stood, he supposed it would
be perfectly safe to throw the drills over beyond the
side track; the drills struck the ground and revolving
struck plaintiff, knocking him down, injuring his arm,
the point of one of the drills entering his arm. A portion
of one of the bones of the forearm had to be removed,
thereby shortening that bone and altering the normal
position of the hand with relation to the wrist, and as
compared with its previous condition permanently
impairing the usefulness of the hand and arm.

The evidence further showed that James, the man
who threw the drills out of the car, was the agent of the
American Express Company, and also a train baggage
man in defendant's service; that under the regulation
of the defendant, promulgated for the guidance and
direction of train baggage men, such baggage men were
not permitted to carry any article or commodity in the
car which did not belong to the passengers on the
train and come properly within the designation of
passenger's baggage, unless it was the property of
the railroad company itself, such as tools, material
or supplies sent out by it for its servants at the
various stations; that drills shipped by the public
over the road, properly fell within the designa-
tion of freight or express matter, and the train
baggage man, James, was not authorized to carry
them; that they could only be carried on a pas-
senger train *by the express company as express matter.*
Plaintiff swore that defendant never to his knowledge
received a cent for the carriage of the drills; that so
far as he knew, his company was the only party inter-
ested in their carriage, and this was corroborated by
defendant's train baggage man, Mr. James, who testi-

fied that he was never instructed by defendant to carry the drills, and never informed any of its officers that he was carrying them; that plaintiff put the drills on the car at Bear Creek and instructed him to throw them off at Withers' Mill for "Uncle Jake," and he carried the drills purely as a matter of accommodation, never having received anything for so doing.

The present management of defendant company took charge in 1884, some two years before the accident. The superintendent, S. E. Crance, the train master, T. S. Beeler, as well as the general agent of defendant at Hannibal, E. F. Bradford, testified that they did not know the drills were being carried by the baggage man on a passenger train. Plaintiff's evidence, however, showed that Woodward, the superintendent who preceded Crance, prior to 1884, as well as Beeler, the train master under the present management, had been seen in the baggage car on two or three occasions when drills were being carried by the baggage man, but the evidence further showed that the presence of drills in the car if seen by them, would excite no suspicion that they were being carried by the baggage man for outside parties; that it was perfectly right and proper to carry drills and tools belonging to the defendant in the car, or to carry such drills in the baggage car as express matter. The evidence further showed that Hance, the conductor of the train, was frequently in the car when the drills were being carried, and probably knew that the baggage man was carrying the lime company's drills, but it was shown that the train baggage man, in his department of work, and in respect to his special duties, was entirely independent of the conductor, who had no authority over him in respect to the nature of the articles carried in the car. Defendant demurred to the case made by plaintiff's evidence, and renewed its demurrer at the close of all

the evidence, but it was overruled. A trial resulted in a judgment for the plaintiff in the sum of $5,000, and the defendant, after an unsuccessful motion for a new trial, brings the case to this court by an appeal.

Before the defendant can be held liable for the negligent act of its baggage man, it must be made to appear not only that at the time of the injury he was its servant and in its employ but that the act of the servant which occasioned the injury was done in the course of his employment. The master is not liable for the acts of the servant which are not connected with the service which the servant had been employed to perform. If, for instance, a servant should be employed to do a particular thing or kind of work, and does something else, without his master's consent, and by reason of his negligence or carelessness, another is injured, the master is not liable, because the injury was not done in the course of his employment. In order that the master may be held liable, the act causing the injury must pertain to the duties which the servant was employed to perform. If the baggage man, in delivering the drills, was not serving his master, but was merely doing so to accommodate others, and the master was deriving no benefit therefrom, then the master is not liable, even though the injury complained of would not have been committed without the facilities afforded by the baggage man's relations to the defendant. *Garretzen v. Duenckel*, 50 Mo. 104; *Cousins v. Railroad*, 66 Mo. 572; *Mitchell v. Crassweller*, 13 Com. Bench, 236; *Farber v. Railroad*, 116 Mo. 81.

In *Coal Co. v. Heeman*, 86 Pa. St. 418, plaintiff, a small boy, climbed onto the cars and a brakeman, after the train started, threw coal at him, striking him in the face, blinding him, and he slipped off and was run over. The evidence showed that the brakeman

had no duty to perform in admitting or excluding persons from the train, that this duty was vested solely in the conductor. The court denied a recovery, saying: "The legal rule was stated in the opinion of ALDERSON, J., in that case (10 Bing. 385) to be, that the act of the servant is the act of the master where the duty is defined by precise orders, and where something is directed to be done, and the manner of doing it is left wholly to the discretion of the servant, the judgment exercised may be considered the judgment of the master, and he must be answerable. 'But,' the judge added, 'where he neither ordered the thing to be done, nor allowed the servant any discretion as to the mode of doing it, I can not see how in common justice or common sense the master can be held responsible.'" An examination of all the testimony showed that there was nothing contained in it to prove that the brakeman, whose conduct was complained of in the assault he made on the plaintiff, *was acting in pursuance* of any authority conferred on him.

In *Farber v. Railroad*, 32 Mo. App. 378, the court says:

"The mere fact that a tortious act is committed by a servant while he is actually engaged in the performance of the service, can not make the master liable. Something more is required. It must not only be done while employed, but it must pertain to the duties of the employment. This has been repeatedly decided in this state. *McKeon v. Railroad*, 42 Mo. 83; *Snyder v. Railroad*, 60 Mo. 419; *Jackson v. Railroad*, 87 Mo. 430."

In *Walton v. Sleeping Car Co.*, 139 Mass. 556, the defendant was the owner of sleeping cars running in the trains of the Boston and Albany railway over its road, and had in its employ as a porter on the car one Maxwell. Maxwell had arranged with a woman at

Newton to do his washing, and the woman was to send her daughter to the train to get his soiled linen. Maxwell did the linen up in a bundle, and, as the train ran through the station without stopping, dropped the bundle off, and it struck plaintiff, a track man on the Boston and Albany road, and injured him severely, and he brought suit against the sleeping car company. Plaintiff asked the trial court to rule "that, if Maxwell was in the employ of the defendant, paid by it for taking care of the car, allowed to keep articles of personal property of his own in the car, and, having such articles in his possession in the car, on this occasion carelessly and negligently threw the same from the car while passing over the railroad therein, in the performance of his general duties in the care of the car, and hit the plaintiff, then being in the exercise of due care and rightfully on the railway, the defendant would be liable for all such damages resulting therefrom as would be legally recoverable for the injury occasioned thereby."

"The judge refused so to rule, and ruled as follows: 'The defendant is not responsible, if the injury to plaintiff was done by Maxwell, the servant of the defendant, without the authority of the defendant, *and not for the purpose of executing the defendant's orders*, or doing the defendant's work, and not while acting as such servant in the scope of his employment. If Maxwell was employed by the defendant as a porter upon its parlor car, and, wholly for a purpose of his own, and disregarding the object for which he was employed, and not intending by his act to execute it, negligently threw a bundle, his own property, from the platform of the parlor car, and thereby the plaintiff, who was not a passenger, was hit and injured while in the exercise of due care, and if this injury was done by Maxwell not within the scope of his employment, then

the defendant is not liable  *   *   *.'   *The judge also* ruled, as requested by the defendant, that, upon all the evidence, the plaintiff could not · recover." The supreme court says:   "The rulings and instructions of the court were correct. There was no evidence that Maxwell was employed by the defendant to take care of his own clothing and personal effects. The act complained of was not within the scope of his employment; and it is wholly immaterial that he was, at the moment, riding in a car of the defendant, in which he was employed by it for other purposes."

In *Cunningham v. Railroad*, 31 U. C. Q. B. 350, the plaintiff was in the employment of one C., a contractor with defendant for building fences along its line. As a matter of convenience to him, he was permitted by defendant to carry his tools upon its trains, and was, at the time of the injury, taking two crowbars from Port Hope to a point on the line of the road where his men were at work. As the train passed the spot, C. dropped one bar out, and the baggage master pitched out the other which struck and injured the plaintiff. The baggage man had nothing to do with C. nor any right to meddle with his tools; nor did he ask him to put the bar out. Held, that defendant was not responsible for the injury, for the baggage man was not acting as the servant for defendant nor in pursuance of his employment.

The evidence shows that the baggage man in the case at bar was a special agent, having no general power, and that his duties were to look alone after the baggage of passengers. Carrying the drills which occasioned the injury, was not within the line of his employment. It necessarily follows that the defendant can not be held responsible for any injuries occasioned by the negligent handling of them, unless it was done by the direction of defendant's officers and

agents, or with their knowledge and consent and for the benefit of defendant corporation. To establish this knowledge on the part of defendant's officers, it was shown that the conductor in charge of the train knew that it was the custom of the baggage man to carry the drills to and from Wither's Mill to Bear Creek, and to dump them off at the latter place, on their return while the train was in motion. Beeler, the general agent, E. F. Bradford, superintendent, and the former superintendent Woodward had been in the baggage car on several occasions when the drills were being carried by the baggage man. But the evidence also showed that the conductor had no control over the baggage man, who was also express messenger, and that it was not unusual to carry such things as express matter; the other parties, Crance, Beeler, and Bradford stated that they did not know that the drills were being carried by the baggage man for outside parties, even if they saw them.

The plaintiff testified as follows: "I don't know that Mr. Beeler knew anything about the arrangement by which the bars were carried. * * * I never paid anything to the company for carrying the drills; I never knew the lime company to pay anything to the defendant for carrying them. * * * The railroad never received a dollar or a cent, to my knowledge, for the carriage of the drills or the letters that I spoke of." * . * *

"Q. No officer of the company knew anything about those drills being carried there, to your absolute knowledge? A. No, sir. * * * I knew the lime company was the only one interested. I did not speak to Mr. Woodward about the drills, nor let him know that the blacksmith was sharpening the drills for us, or that the drills were being carried on the train." The evidence did not show that the officers of the defend-

ant knew that the baggage man was in the habit of carrying the drills for the lime company, that they consented to it, or that it came within the line of his duty to do so, but it did show to the contrary.

If it had been shown that the baggage man had been in the habit of carrying the drills and putting them off at Bear Creek Station by and with the knowledge and consent of defendant's officers and *its agent*, authority to do so might be inferred therefrom. *Edwards v. Thomas*, 66 Mo. 468. But he was, also, at the same time, agent for an express company and his conduct in handling the drills was as consistent with the one service as the other. Moreover, he testified that he was not acting as baggage man in handling the drills; that he did so gratuitously merely as an accommodation to the plaintiff, and the evidence of the plaintiff himself tended strongly to show that such was the case. The mere fact that the baggage man handled the drills was no evidence, of itself, that he was doing so in the capacity of baggage man and was no notice to defendant. In order to make defendant liable for the act of the baggage man for acts of negligence committed not in the line of his employment, it must be shown that he either had express authority to transact the business connected with the injury, or that defendant, by its officers, knew that he, *as its agent*, was so engaged for such a length of time as would justify the presumption that he was authorized to so act. It was not enough that the conductor, Hance, had knowledge that the baggage man was in the habit of carrying the drills from Withers' Mill and putting them off at Bear Creek Station for the lime company, for, as has been said, the conductor had no control whatever over him and notice to him was not notice to the defendant company.

But it is contended by plaintiff that Jacob Stover,

the defendant's ticket agent at Withers' Mill, shipped the drills on the passenger train of defendant of his own accord without solicitation · of plaintiff and with the acquiescence, if not permission, of defendant, and that in so doing he was in the line of his employment as station agent, his act was that of the defendant and that it is estopped to deny that its agent acted without its knowledge and authority. That this position is correct with respect of the acts of a station agent clothed with the power to receive and forward freight, and who acts within the scope of his authority, seems to · be well settled law. *Harrison v. Railroad*, 74 Mo. 370, and authorities cited. But there was not one *scintilla* of evidence which showed, or tended to show, that the drills were sent as freight, or that Stover had any authority to send them as such, or in any other way, on defendant's passenger trains.

Stover's acts in sending the drills by the baggage man, as well also as of the latter in handling them, were unauthorized by defendant who should not be held responsible for the injury under the circumstances disclosed by the evidence. The arrangement seems to have been one between plaintiff for the lime company and James, the train baggage man, with reference to something not in the line of his employment and of which his employer had no knowledge and gave no consent.

Under the views herein expressed, it becomes unnecessary to pass upon the question as to what duty defendant owed plaintiff at the time of the injury when on its right of way for the purpose of mailing letters upon its train.

The demurrer to the evidence should have been sustained. The judgment is reversed. All of this division concur.