Davis, C. J.
The defendant in error has filed no brief in this case and is probably relying on the re *352 ported opinion of the circuit court (25 O. C. C., 457) and the cases cited therein. We have examined all of these and also as many other cases upon the questions here involved as we could find.
The question presented is whether the knowledge of a policeman concerning the defective nature of the covering over the hole in the sidewalk, is such notice to the municipality as to make the latter responsible for damages resulting from the defect. It may be accepted as the general rule that the municipal corporation will be liable, if knowledge of the defect is brought home to an officer or employe who has some duties to perform in regard to the removal of defects or obstructions in the streets. Accordingly it has been held that knowledge of a defect or obstruction by a policeman, where he is properly charged with duties with respect to the removal of the defect or obstruction, is notice to the corporation. Even as to the proposition as thus ■ stated there is not entire harmony among the courts which have considered this question; but, as the authors of a leading treatise put it, “we think that, upon principle, a city ought not to be charged with actual notice in any case unless the officer or person having the knowledge is in some way charged with the duty of maintaining, repairing or looking after the streets.” Elliott on Roads and Streets (2 ed.), sec. 629.
• The fundamental proposition in cases of this kind is that notice to the agent is notice to the principal, provided that the notice must have reference to matters within the scope of the agent’s authority. For example, in Walker v. Railway Co., 121 Mo., 575, where the plaintiff was injured by a drill thrown from a car by the baggage man, it was held that knowledge *353 by tbe conductor, who bad no authority over the baggage man, that the latter was in the habit of carrying drills for a lime company and putting them off at its quarry, was not notice to the railway ■company.
In determining the extent of a police patrolman’s authority, it will be necessary to go bach to the origin of his authority. The police power relates to the public peace, good order and welfare, and to the public health. It is a power which is inherent in the sovereignty of the state; and it can be ■exercised only by authority from the legislature. “Municipal corporations, in their public capacity, possess such powers and such only, as are expressly granted by statute, and such as may be implied as essential to carry into effect those .which are expressly granted.” Ravenna v. Pennsylvania Co., 45 Ohio St., 118. It follows that unless we can find in the statutes a distinct right to do so, a municipal corporation can neither enlarge nor restrict the duties of the police’ department as commonly understood.
Section 1692 of the Bevised Statutes, which was in force at the time of the injury to the defendant in error (Bates’ Bevised. Statutes, 3 •ed.) provided that, “In addition' to the power's specifically granted in this title, and subject to the exceptions' and limitations in other parts of it, cities and villages shall have the general powers enumerated in this section, and the council may provide by ordinance for the exercise and enforcement, of the same;” and with relation to the police, the general power prescribed in that section is as follows : “29. To organize and maintain a police de *354 partment.” That is the whole of it; simply to organise and mamtain a police department. There' is not even a suggestion here of power in a municipality to define the limits of police department duties.
But the legislature itself elsewhere in the same title specifically did this. The city was then governed under a special law which has since been repealed. By that act the police department was placed under the control of an officer who was called the director of police and he was invested with the power formerly vested in the board of police commissioners; and it was provided that “all the provisions of law pertaining to the said police and health departments shall apply to the police department and be administered by the director thereof.” (Sections 1545-40 and 1545-47, Revised Statutes. Bates’ Revised Statutes, 3 ed.) The general duties of the police force were defined in section 1934, Revised Statutes, as follows: “The board (director) of police and the police force hereby constituted shall * * * preserve the public peace, prevent crime, arrest offenders, protect rights of persons and property, guard the public health, preserve order, remove nuisances existing in the streets * * * report all leaks or other defects in water pipes and sewers to the proper authorities * * * and generally obey and enforce all ordinances of the city council,- criminal laws of the state and of the United States'. ”
Three things are evident in this legislation. First, that the authority of the police is derived directly from the -state and not from the municipality. Second, that there is no direction to *355 repair or report to the proper authorities, a defect in the streets or sidewalks, although there is such s duty imposed as to defects in water pipes and: sewers. Expressio unius est exclusio alterius. Third, that the “nuisances existing in the streets”1' which the police force is required by this section to* remove, are public nuisances such as are defined in; and punished under section 6921, Revised Statutes -r or such as may be properly declared by ordinance of the council under section 1692, ut supra. The statute does not refer to private nuisances except in the requirement to report all leaks or other defects im water pipes and sewers.
In section 1933, which prescribes the duties of the head of the department, it is provided that “It shall be the duty of the board at all times, when consistent with the rules and regulations of the same, to-furnish all the information desired, and comply with all the requests made by the city council or mayor,” etc. The information which is here required to be given is not to the department of public works, which was expressly charged with the care and repair of the streets of the city, but to the* council upon its desire and request, and subject to-the judgment of the head of the department of police,, as to whether the giving of such information would be consistent with the rules and regulations of the-department and with the requirements of the statutes. No subordinate is given the right to give such-information ; and, conceding for the purposes of the; argument that he could be given such right by ordinance or resolution of the council, it does not; appear in this case that such ordinance or resolution; existed. Conceding for the sake of the argument *356 that the municipality could make the police department jointly responsible for the care of the streets ■with the department of public works, or that it could, without a grant of power from the general assembly, make the officers of the police department the city’s agents for any purpose connected with the duty of the corporation to keep its streets open, in repair and free from nuisance, yet, this being a legislative power, it must at least be done by ordinance (section 1692, ut supra) and none is shown here.
All of the (jases relied upon as authority by the circuit court, we believe, were cases in which the authority of the officer was given through both statute and ordinance. City of Denver v. Dean, 10 Colo., 375; Rehberg v. Mayor et al., 91 N. Y., 137; Goodfellow v. Mayor et al., 100 N. Y., 15. The same condition of the facts appears in all of the following cases in which a municipal corporation was held to have notice through the knowledge of a policeman. Twogood v. Mayor et al., 102 N. Y., 216; Cummings v. Hartford, 70 Conn., 115; Carrington v. St. Louis, 89 Mo., 208; Hayes v. West Bay City, 91 Mich., 418; Columbus v. Ogletree, 96 Ga., 177; Columbus v. Ogletree, 102 Ga., 293. We have found no clear and well defined exception to this current of authority.
The rule which was offered in evidence by the plaintiff below, was conceded to be one of the rules and regulations of the police force of the city; but it stands by itself, unsupported by any act of the general assembly or any ordinance of the city council, valid or invalid, so far as appears in this record. We are bound to presume that the rule was made under favor of section 1937 of the Revised Statutes as then *357 in force, which provided that “The qualification, enumeration and distribution of duties * '* * of each member of the police force, shall be particularly-defined and prescribed by rules and regulations of the board” (director). It therefore seems to be merely a rule for the government and convenience of the police department. It requires the policeman, to “note” and do certain things, “and in all cases of complaint by citizens, with residence of complainant, shall make report thereof.” To whom shall he report? Presumably to his superior officer. For what purpose? To advise the department as to matters which might come within the scope of its duties. The policeman is required to remove all defects from street or sidewalk “when practicable,” which means as we construe it, when it can be immediately, conveniently and readily done without interfering with the customary duties of a policeman. He is required to note all coal holes left exposed or insecure and all nuisances or violations of the health ordinance, because these, as well as the other'things which he is required to “note,” may involve such a breach of city ordinances as to call for intervention by the police. So that the policeman’s duty under this rule is strictly police duty and not street repair duty; and in the absence of any showing, or offer to show, that the city had authority, to make a policeman its agent in matters relating to keeping its streets and sidewalks in repair and that it had by ordinance made him such agent, such rule was properly rejected by the trial court; and that court did not err in directing a verdict for the defendant and in rendering judgment for the city upon such verdict.
*358 Accordingly the judgment of the circuit court is reversed and the judgment of the court of common pleas is affirmed.

Reversed.

Shauck, Price, Summers and Spear, JJ., concur.