MIKE OGANASO v. WILLIAM T. MELLOW, R. WESLEY MELLOW, GEORGE E. MELLOW, CARRIE M. KINSEY and LOUISE B. McDOWELL, Co-Partners, doing business under the name LIBERTY FOUNDRY COMPANY, Appellants.—No. 40102.—201 S. W. (2d) 365.

Division One, April 21, 1947.

*J. Porter Henry* and *Green, Henry & Evans* for appellants.

*Hay & Flanagan, S. D. Flanagan* and *E. D. Franey* for respondent.

230

VAN OSDOL, C.—Action for $25,000 for personal injuries sustained by plaintiff while engaged as an independent contractor in tuck pointing the brick wall of a foundry building belonging to defendants, partners, and used by them in their business of molding metals. The jury returned a verdict for defendants; but the trial court sustained a motion for a new trial, and defendants have appealed.

The motion for a new trial was sustained on the ground instructions given at defendants' request were erroneous. Defendants-appellants contend the trial court erred in sustaining the motion on that ground; and they further contend the trial court should have sustained their motion for a directed verdict, which motion was presented at the conclusion of all of the evidence. Errors of the instructions are immaterial upon appeal, if the plaintiff's case should not have been submitted to the jury. Bootee v. Kansas City Public Service Co., 353 Mo. 716, 183 S. W. (2d) 892. In view of our ruling, infra,

upon the question of the submissibility of plaintiff's case, it will be unnecessary to consider the contentions of the parties relating to instructions.

At the outset we were met with a contention of plaintiff-respondent that the motion for a directed verdict was insufficient in that it failed to state with particularity the grounds therefor. The motion was as follows, "Now at the close of the whole case defendants ask the Court to direct a verdict in favor of defendants." Plaintiff-respondent urges Section 60 of the Civil Code of Missouri, Laws of Missouri 1943, p. 374, is applicable. The section provides, in part, that an application to the court for an order shall be by motion, which, unless made during a hearing or trial, shall be made in writing, "shall state with particularity the grounds therefor, and shall set forth the relief or order sought." Section 60, supra, governs applications for orders of court made prior to hearing or trial, and is not applicable to a motion for a directed verdict, which motion now is provided (in lieu of the former demurrer to the evidence and in lieu of the request for peremptory instructions) by Section 112, Civil Code of Missouri, Laws of Missouri 1943, p. 387. Prior to the adoption of the Civil Code of Missouri, the office of the demurrer to the evidence (and the request for a peremptory instruction in the nature of a demurrer to the evidence) was quite generally understood, and held to be a challenge of the sufficiency of the evidence to make a submissible case for the jury. It was then unnecessary to state what particular element or elements, essential under the principles of law applicable to the case, to support which it was contended the evidence was insufficient. For a discussion of the duty of the trial judge upon a request for a peremptory instruction, now a motion for a directed verdict, see Hardin v. Illinois Cent. R. Co., 334 Mo. 1169, 70 S. W. (2d) 1075. Now, since the adoption of the Civil Code of Missouri, we hold a motion for a directed verdict is insufficient save and except the movant "makes known to the court . . . his grounds therefor" in compliance with Section 122, Civil Code of Missouri, Laws of Missouri 1943, p. 389, either in the motion or orally into the record of the trial court. Of course, we are not unacquainted with a commendable practice of trial courts in affording counsel opportunity to be heard orally, when the motion for a directed verdict has been made and before the cause is submitted to the jury, upon the question of the sufficiency of the evidence to make out a submissible case. In the instant action, however, as will be seen infra, defendants' contention the plaintiff failed to make out a case for the jury has merit, and we have deemed it proper to consider the question under the provisions of Supreme Court Rule No. 3.27.

Defendants' foundry is located along the west side of Reilly Street in St. Louis. The foundry has separate departments, or shops. The building housing defendants' Shop No. 4 is situate at the south end

of the plant, and the east wall of the building is coextensive with the west line of Reilly Street. Shop No. 3 adjoins Shop No. 4 on the north; and Shop No. 2 is "in back" west of Shop No. 3. Reilly Street is macadamized, but there is a space of about twenty feet between the macadamized portion of the street and the property line; the space is of dirt and slopes up toward the wall of the building. A parking lot "on Steins street" is provided by defendants for their employees' automobiles; but the men working at the foundry "do park their cars" on the "ground between the building and the street." Two of the partners-defendants and defendants' superintendent, Al Uthoff, "we three," made the "arrangements" with plaintiff for the tuck-pointing work.

In tuck pointing defendants' building (housing Shop No. 4) plaintiff was working northwardly along the east wall; had completed his work up to near the center of the wall; and had placed his eighteen-foot ladder against the wall with the ladder's base three or four feet from the wall and very near ("about one-half inch") to the left, south, of an automobile parked with its front end toward and about ten inches from the wall. The automobile was the property of Orazzio Piva, who was a molder in the employ of defendants in their Shop No. 2, of which, it seems, William W. Grills was foreman, although the evidence is equivocal on the question, that is, which foreman (Grills or one Michael Jacobs) had supervision over Piva's work as a molder. It was necessary that the automobile should be moved so plaintiff could continue northwardly in his tuck-pointing work. There is also a conflict in the evidence touching upon the question—who asked Piva to move his automobile. Plaintiff testified that Michael Jacobs, foreman of Shop No. 4, told plaintiff that he, Jacobs, would have Piva move his car; and, since Piva presently did move the car, it could be inferred that Jacobs had so directed Piva. Jacobs had complimented plaintiff's tuck-pointing work; and had offered plaintiff a molding job, when "cold weather comes." Plaintiff, immediately before he was injured, had seen Jacobs inside "when he ordered molders what to do." The same man said, "I have this machine moved, you can get around there." Jacobs, however, a witness for plaintiff, testified he "did not tell Piva to move his car"; and defendants' witness, Henry C. Olzen, testified that he had seen plaintiff looking into the automobile; had noticed the automobile should be moved; and had told plaintiff that he, Olzen would ask Piva to move his car. Presently, however, and while plaintiff was upon the ladder, Piva came out of the foundry; unlocked and moved into his automobile from its right side; released the brakes; and let the car coast back down the slope to the eastward. Evidence was substantial in tending to show that Piva negligently permitted the front bumper of his car to come into contact with the ladder; the ladder was knocked over and plaintiff was injured. Olzen was defendants' maintenance man,

maintaining "molding machines, air hoists, chain hoists; general maintenance through the property." He was "not the building maintenance man."

The molders employed by defendants are skilled workers; and there was testimony the "molding foreman, his business is only with those men, their equipment and materials they use, to keep them supplied with materials, so they can work"; and there was no evidence tending to show the foremen of molders had other duties. There ▮ was evidence that no person was designated or authorized to supervise the parking of automobiles. Piva's automobile was used by him in going to and from his work. He did not use his automobile in any work for his employers.

▮ The relation of employer and employee, or master and servant, existed between defendants and Piva; between defendants and Jacobs; and between defendants and Olzen. The tortious conduct of the employee, however, which is imputed to the employer under the principle of respondeat superior, is that of the employee while acting in the scope of his employment. Milazzo v. Kansas City Gas Co., Mo. Sup., 180 S. W. 2d 1; Smothers v. Welch & Co. House Furnishing Co., 310 Mo. 144, 274 S. W. 678; Wolf v. Terminal R. Ass'n., 282 Mo. 559, 222 S. W. 114; Haehl v. Wabash R. Co., 119 Mo. 325, 24 S. W. 737. An employer is liable for the acts of his employee " 'only when the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged with the result of the wrong at the time of the injury, and in respect of the very transaction out of which the injury arose.' " Vert v. Metropolitan Life Ins. Co., 342 Mo. 629, 117 S. W. 2d 252, quoting 39 C. J. 1268, sec. 1452. See also Pesot v. Yanda, 344 Mo. 338, 126 S. W. 2d 240; and Acker v. Koopman, Mo. Sup., 50 S. W. 2d 100. It has been stated that, in order to hold the employer responsible, it is necessary that the employee's acts pertain to the duties of his employment. Wolf v. Terminal R. Ass'n., supra; Milton v. Missouri Pac. R. Co., 193 Mo. 46, 91 S. W. 949; Walker v. Hannibal & St. J. R. Co., 121 Mo. 575, 26 S. W. 360; Snyder v. Hannibal & St. J. R. Co., 60 Mo. 413; Farber v. Missouri Pac. Ry. Co., 32 Mo. App. 378, affirmed 116 Mo. 81, 22 S. W. 631.

▮ Piva's automobile was not an instrumentality furnished by defendants for use in his employment; Piva's car was his own; he did not use the car in his employment; nor was it shown Piva had an obligation (to use his car in going to and from his work) as a part of the contract of hiring. The automobile was not the property of defendants, who, had they owned the car or had it in their charge or control, might have had a duty to move it, as did defendant whose employees were negligent in handling the box of tile in the case of Howard v. S. C. Sacks, Inc., Mo. App., 76 S. W. 2d 460, cited by plaintiff. And in the Howard case it is noticed the defendant's employees were electricians whose duty in their employment was to use the boxed tile

in their electrical work. They were acting in the scope of their employment in handling the box of tile. Piva's act in moving his automobile related to his own property used by him, not in the work for which he was employed, but for his own purpose and convenience in going to and from the place of his employment. Moving the car was not work of the nature, class or kind for which Piva was employed. It could not be fairly stated the act of moving the car was incidental to the work for which he was employed. Plaintiff's injury was not in any way induced by a reliance upon an apparent authority of Piva (or of Jacobs, or of Olzen). The movement of the car could be said to be for the employers' benefit (as well as for the benefit of plaintiff), inasmuch as moving the car was for the purpose of making way for and facilitating the tuck-pointing work; but Piva was employed as a molder, and not as a tuck pointer's helper, or a mover of cars or a supervisor of the parking of cars. The fact that the employee's act was for the employer's benefit is not, in itself, determinative that the act was in the scope of the employment. Brown v. Jarvis Engineering Co., 166 Mass. 75, 43 N. E. 1118; Marion v. Chicago R. I. and P. R. Co., 59 Ia. 428, 13 N. W. 415, 8 Am. & Eng. R. R. Cases 177; Farber v. Missouri Pac. Ry. Co., supra; 39 C. J. 1284-1285, sec 1475; Vol. 6, Labatt, Master and Servant, sec. 2286, pp. 6901-4. It has been written the purpose of the employee to benefit the employer (or the fact that the employer is actually benefited) is a differentiating factor in a case where the evidence, apart from that which relates to the employee's intention, is "of ambiguous import, as being susceptible either of the inference that the given tort was committed in the course of the servant's employment, or of the inference that it was committd from personal motive, or with a view to the advantage of a third party." Vol. 6, Labatt, Master and Servant, sec. 2286, pp. 6903-4.

In the case of Brown v. Jarvis Engineering Co., supra, defendant was a contractor constructing the foundation for a printing press for Advertiser Company in the basement of Advertiser Building. Plaintiff, the driver of a van containing rolls of paper being delivered to Advertiser Company, backed up the van to the rear entrance of Advertiser Building. It was necessary that defendant's work should be suspended while the paper was being unloaded. There was evidence tending to show Healey, defendant's foreman, in whose charge and under whose direction defendant's men were working, ordered the workmen to go and assist in unloading the van. The defendant contractor was held not to be responsible for the negligent act of one of defendant's men in assisting in the unloading, which act injured plaintiff; the "defendant employed these men to construct a foundation in the basement, and did not employ them to unload vans, or to do any other act, although such act might in some way expedite the business of the master." And the act of Healey, in directing defen-

dant's workmen to unload the van, although for the purpose of carrying forward the work and for the benefit of defendant, was not within the scope of his employment.

It is our opinion that, when the tort was committed, Piva had temporarily suspended the performance of the duties of his employment; and was attending to his own personal responsibility relating to his own automobile—he was acting outside of the scope of his employment at the time. But it is urged that the act of Piva in moving his car was at the direction of defendants through their foreman, Jacobs; or through Olzen, the maintenance man. And here again we find that Jacobs (or Olzen), in telling Piva to move his car, was not acting in the scope of the employment of Jacobs (or Olzen), who, as foreman of molders (or as maintenance man), so far as the evidence tends to show, was employed to perform only such duties as we have outlined in the statement of facts, supra. Brown v. Jarvis Engineering Co., supra. We bear in mind Jacobs and Olzen (and Piva) were, according to the evidence, respectively employed as foreman of molders, as maintenance man, and as molder; and no evidence was introduced tending to show any one of them was entrusted in his employment with any duties relating to defendants' building or relating to the parking of automobiles. How could it be reasonably found the act of any one of them in connection with the movement of the automobile was incidental to the work he was employed to do. The burden was on plaintiff to show that the person whose act occasioned plaintiff's injury was acting in the scope of his employment. Drolshagen v. Union Depot R. Co., 186 Mo. 258, 85 S. W. 344.

But it is contended by plaintiff that the relation of plaintiff and defendants was that of invitee and invitors, and it may be conceded that plaintiff was an invitee working on the walls of the building occupied by defendants and for the mutual benefit of defendants and plaintiff. (The fact that the plaintiff's ladder was placed upon lands included in a public street is of no determinative significance in the instant action, we believe.) Because of the relation of invitor and invitee, it is urged by plaintiff that defendants, occupiers of a building, had a duty to protect plaintiff from the wrongful conduct of defendants' employees. It is true that, because of the incidence of some contractual relation with a third person, an employer may be subjected to liability for the wrongful conduct of his employee although the employee was acting outside the scope of his employment. For example, in the relation of carrier and passenger, the carrier has a duty to protect passengers from assaults by its employees. See Shelby v. Metropolitan St. R. Co., 141 Mo. App. 514, 125 S. W. 1189, cited by plaintiff. In such a case the liability of the carrier arises out of the contractual relation of carrier and passenger. An invitor, occupant of a building, has the duty to use ordinary care to keep the premises in a reasonably safe condition for any use the invitee

may make of them in the scope of the invitation. See Brody v. Cudahy Packing Co., 233 Mo. App. 973, 127 S. W. 2d 7, cited by plaintiff. Usually, in such a case a court is examining the duty which the owner or occupant of land owes to his invitee with reference to the condition of the premises. Cash v. Sonken-Calamba Co., 322 Mo. 349, 17 S. W. 2d 927. In the case of Cummings v. Union Quarry & Construction Co., 231 Mo. App. 1224, 87 S. W. 2d 1039, cited by plaintiff, a defendant had undertaken to furnish the place and appliances for an independent contractor's work and retained control over the furnished place and appliances. It was held defendant had the same duty (to furnish a reasonably safe place for work and appliances reasonably safe for the purposes for whch they were furnished) as that of a master to a servant. But in the case at bar plaintiff's injury was not due to the unsafe condition of defendants' premises, nor was his injury due to any defective appliance. Plaintiff's injury was occasioned by the conduct of Piva.

It has been said a defendant, an invitor and proprietor of a store, may be held responsible for the wrongful act of an employee (although the act was committed outside the scope of the employment) if the defendant had been negligent in failing to exercise ordinary care in furnishing competent and law-abiding employees. See Priest v. F. W. Woolworth Five & Ten Cent Store, 228 Mo. App. 23, 62 S. W. 2d 926; and Smothers v. Welch & Co. House Furnishing Co., supra. In the case at bar there was no evidence introduced tending to sustain such a theory of liability of defendants. And so, it seems, the defendants, although invitors, if liable, were liable as employers for the wrongful conduct of their employees under the principle of respondeat superior. Daugherty v. Spuck Iron & Foundry Co., Mo. App., 175 S. W. 2d 45; Priest v. F. W. Woolworth Five & Ten Cent Store, supra. Consequently, the inquiry into defendants' liability to plaintiff again narrows to the question whether the act which caused plaintiff's injury was an act of an employee who was at the time acting *in the scope of his employment*. This question we have considered supra.

In our opinion, there was no substantial evidence introduced showing or tending to show plaintiff's injuries were occasioned by an act for which defendants should be held responsible. The motion for a directed verdict should have been sustained.

The order granting the motion for a new trial should be reversed, and the cause remanded with directions to reinstate the verdict and judgment for defendants.

It is so ordered. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.