St. Louis Southwestern Railway Company of Texas v.
Joe Mayfield.

Decided March 3, 1904.

**1.—Trespasser—Liability.**
One riding on a freight train, against the company's rules, is a tres-
passer and the company owes him no duty save not to willfully or wantonly
injure.

**2.—Master and Servant—Liability for Servant's Act.**
The master is not liable for the acts of the servant in doing that which
the master has no right to do and has not authorized, though such acts are
done in good faith and with the intention to further the master's interest.

**3.—Same—Care of Injured—Charge.**
Plaintiff having been injured in getting off a freight train on which he
was a trespasser, a charge instructing the jury to find for plaintiff if his inju-
ries or sufferings were increased by the wrongful act of the servants of the
railway in taking him, against his will, away from his home, the place where
he was injured, to another town, for medical attention, was erroneous, plain-
tiff having failed to show that such acts of the servants were authorized or
done in the prosecution of the master's business.

Appeal from the District Court of Hunt.   Tried below before Hon.
H. C. Connor.

*E. B. Perkins* and *Crosby & Dinsmore,* for appellant.

*Evans & Elder,* for appellee.

NEILL, Associate Justice.—This suit was brought by the appellee
against appellant to recover damages for personal injuries alleged to
have been inflicted by the negligence of the railway company.   Appel-
lee's petition contained two counts.   In the first it was alleged in sub-
stance that on the 29th day of June, 1901, appellee boarded one of
appellant's freight trains at Commerce, Texas, paid his fare from there
to Neyland station, and thereby became a passenger on said train, with
the right to be carried and treated as a passenger and safely put off at
his destination.   That when the train was nearing Neyland appellee
was directed by the conductor to stand on the steps of the caboose and
to alight when it slowed up; that he took his position on the steps as
ordered and as the train slowed up and he was endeavoring to alight,
appellant, with knowledge of his dangerous position, negligently and
willfully caused the car on which he was riding to be suddenly and vio-
lently jerked, whereby he was thrown off, knocked insensible, his right
foot run over and so mashed and mangled by the car wheels as to necessi-
tate its amputation, to his damage in the sum of $10,000.

The second count, after alleging appellee's fall from and injury by
being run over by the train, alleged in substance that he resided near
Neyland, where there were skilled and competent surgeons prepared to
give him necessary surgical attention and treatment; that he had numer-
ous friends there who desired to take charge of him and carry him home

and secure him the proper surgical attention and relieve him from his pain and suffering. But that appellant acting through its servants and agents in charge of said train, with knowledge of such facts, took charge of him immediately after his injuries, and, over his protest and against his will, placed him on the train and carried him to the town of Greenville, a distance of ten miles from Neyland, and then took him from the train and left him on appellant's platform alone among strangers in a helpless and almost insensible condition, where he remained an hour, until by chance one of his friends in Greenville carried him to his house where he remained until about 1 o'clock next morning, when his father, having learned of his injuries, came and carried him to his home near Neyland, arriving there about daylight, when surgical attention was first given to his injuries. That by reason of the unlawful and forcible taking charge of plaintiff against his will and carrying him to Greenville and leaving him helpless and alone as before stated, appellee's physical and mental pain arising from his injuries were greatly increased and prolonged for a period of about fifteen hours, to his damage in the sum of $5000.

Appellant answered by pleas of not guilty, contributory negligence, that appellee was a trespasser on its freight train when injured and therefore it owed no duty to furnish him medical or surgical treatment or care, and that if its conductor in charge of the train undertook to carry appellee from Neyland to Greenville, he did so without its authority or consent.

The case was tried before a jury to whom was submitted by the charge of the court the matters plead in each count of appellee's petition, and a verdict was rendered on the second count in his favor for the sum of $825, upon which the judgment appealed from was entered.

This verdict necessarily involves a finding in favor of appellant on the first count in appellee's petition. In other words that he was a trespasser and not a passenger on appellant's freight train, to whom the latter owed no duty save not to willfully or wantonly injure. Houston & T. C. Ry. Co. v. Moore, 49 Texas, 31. The evidence fully sustains such findings, for it shows that the rules of appellant prohibited and excluded passengers from being carried on its freight trains; that such rules were in force by the company, and it did not habitually permit passengers on such trains, and that appellee intruded himself upon the train without the knowledge or consent of appellant's servants in charge of and operating it, and that his injuries, caused from falling off and being run over, were proximately caused by his own wrong.

If the fact, established by the verdict, that such injuries were not attributable to the negligence of appellant, but were the proximate result of appellee's own negligence, appeared from the second count of the petition, it would be a matter of very grave doubt as to whether it shows any cause of action. If after an injury to a person for which a railway company is in no way responsible, the employes of the company forcibly and against his will take the injured party, place him on one of the com-

pany's trains, carrying him away from his friends and home and leave him unattended and uncared for in the broiling sun on the platform of another station, it certainly could not be contended that such acts were done in the course of the employment or could fairly and reasonably be inferred from the circumstances to be within the authorized power of the railway's servants. Such acts could only be considered as the malicious and wrongful acts of the employes unauthorized and unauthorizable by their employer, extending beyond and outside of the scope of any duty arising or that could arise or be inferred from any duties of their employment. The master is not answerable if the servant takes on himself, even in good faith, and meaning to further the master's interest, to do that which the master has no right to do, even if the facts were as his servant thinks them to be (Webb's Pollock on Torts, 107); as where the conductor of a passenger train stopped his train, pursued a boy on foot into the house of the boy's father with pistol in his hand, and seized and carried him off on the train. Gillian v. S. & N. A. Ry. Co., 70 Ala., 268.

This much, in view of another trial, we have deemed it proper to say in reference to the second count in the petition, though its sufficiency is not called in question by any of appellant's assignments.

The evidence shows that appellee at Neyland, in his effort to get off one of appellant's freight trains in motion, upon which he was a trespasser, fell, and his right foot was thrown under the car wheels and was mashed and mangled and that he was otherwise seriously injured; that he resided a mile and a half or two miles from the place where he received his injuries; that upon his fall, the train was stopped and the conductor, for the purpose of having his injuries treated by the company's surgeon at Greenville, which was about ten miles from Neyland, placed him on the train and carried him there, where he put him off at the depot and endeavored to find the company's surgeon in order to have his wounds treated; that his surgeon being temporarily absent could not be found, and the conductor not being able to secure the services of another surgeon without his pay being in some way secured, wired the company's superintendent as follows: "There was a negro beating his way on No. 15 to-day claiming his home at Neyland. Went to get off the train, fell under and got his right foot crushed. I picked him up and brought him to Greenville as there was no medical aid there. The company doctor is here and wants to know what to do with him." To which he received the following reply: "We are not responsible for the condition of the negro; turn him over to the city or county authorities." Appellee was then carried by an acquaintance to a negro's house about half a mile from the depot, his father sent for, who arrived there about 9 o'clock p. m., and his wound was dressed, and he was carried by his father to his home near Neyland, where surgical aid was procured and his foot amputated and other surgical attention given. There was evidence tending to show that appellant maintained a hospital at Greenville for the purpose of giving surgical treatment to passengers

hurt or wounded while in its charge, and that it was within the scope of duty of the conductor of the train on or by which a passenger was injured, to convey him to the hospital if he deemed it necessary.

We have thus summarized the testimony pertinent to the matters alleged in the second count in the petition in order that what we may say in passing upon the assignments of error may be clearly understood.

In the ninth paragraph of its charge the court in substance instructed the jury that if they believed from the evidence that if appellant's servants had left appellee at Neyland after he was injured, he would have received proper medical and surgical attention, and that if a person of ordinary prudence under the same circumstances would have left him there, and if appellee's sufferings were prolonged or increased by reason of his having been carried to Greenville, and the servants of appellant were guilty of negligence in carrying him there, and such negligence was the direct and proximate cause of such additional sufferings, they would find for appellee on the second count. This portion of the charge is complained of as error upon the ground that appellee's pleadings are insufficient to authorize the submission of such question to the jury, or to support a verdict in appellee's favor upon such issue, and that the uncontroverted evidence shows that appellant's servants in charge of the train in moving appellee to Greenville were acting without authority from appellant and beyond the scope of their authority as its servants or agents.

It will be observed from our statement of the allegations in the second count of appellee's petition, that there is no averment of any duty or undertaking on the part of appellant to give surgical treatment even to passengers who were injured while in its charge, or that it was within the scope of the duty of their employment for appellant's trainmen to carry on its trains persons injured while passengers thereon or any other parties injured by it to its hospital or where they could receive surgical treatment. Nor is the question of such duty either on the part of appellant or its trainmen involved in that part of the charge complained of. Had there been such averments it may possibly have been a question for the jury to determine whether the carrying by its servants of appellee, after he was wounded, away from near his home to Greenville, was within such apparent scope of their duty as would render the appellant liable for their act. But, as we have seen from the second count, the carrying of appellee from Neyland to Greenville by the trainmen was alleged to have been forcibly and unlawfully done against his will. A master can only be liable for the willful and deliberate wrongs committed by the servant when they are done on his account or for his purpose. To hold the master liable, the act must be done within the scope of the general authority of the servant. It must be in furtherance of the master's business and for the accomplishment of the object for which the servant was employed. The mode in which the servant performs the duty he is engaged to perform, if wrongful and willful and to the injury of another, renders the master liable although he may have

expressly forbidden the particular act. Whether the act in question can be implied from the general authority conferred upon the servant must in general depend upon the nature of the service he is engaged to perform and the circumstances of the particular case. International & G. N. Ry. Co. v. Anderson, 82 Texas, 520. In the case under consideration there are no matters plead which, if proven, would tend to show that the alleged wrongful act of appellant's servants in carrying appellee to Greenville was done within the scope of their general authority, in furtherance of their master's business, or for the accomplishment of the object for which they were employed. The master is not answerable for the act or negligence of its servant while doing something the master has not ordered done, if he has not authorized the servant to exercise a discretion in determining what to do. Morris v. Brown, 111 N. Y., 318.

Whether a servant really is bent on his master's affairs or not is generally a question of fact (Texas & P. Ry. Co. v. Hayden, 6 Texas Civ. App., 747; Goodloe v. Railway Co., 54 Am. St. Rep., 85); and it is incumbent upon him who seeks to hold the master liable for the wrongful act of his servant, to allege and prove such facts as will show that the wrongful act causing the injury was done by the servant in prosecution of his master's business. This is not done in this case. We therefore conclude that the court erred in giving the portion of the charge complained of, for which error its judgment is reversed and the cause remanded.

*Reversed and remanded.*

Writ of error refused.