WIESS v. GORDON. (No. 420.)

(Court of Civil Appeals of Texas. Beaumont. Feb. 20, 1919. On Motion for Rehearing, March 13, 1919.)

1. LANDLORD AND TENANT &#9758;169(7)—DESTRUCTION OF PAPERS BY JANITOR—LIABILITY OF LANDLORD.

In action by lawyer to recover against owner of office building for destruction of valuable papers by janitor, evidence *held* to show that janitor was acting within scope of his employment when he cleaned out plaintiff's office.

2. LANDLORD AND TENANT &#9758;166(1)—DESTRUCTION OF PAPERS BY JANITOR—DUTY OF TENANT.

Where janitor of office building told one of law firm that valuable papers had been destroyed by him by burning, firm, or particular partner who owned papers, was authorized to act on statement, and not under duty, as condition to gaining right of action against owner of building, to pursue inquiry further, as by seeing if papers could be recovered.

3. LANDLORD AND TENANT &#9758;168(2)—DESTRUCTION OF VALUABLE PAPERS—CONTRIBUTORY NEGLIGENCE.

Lawyer whose valuable papers were negligently destroyed by janitor of office building was not guilty of contributory negligence in not telling owner of building of loss for two days after he was informed of it by janitor.

4. LANDLORD AND TENANT &#9758;169(7)—DESTRUCTION OF PAPERS—AMOUNT OF DAMAGE—SUFFICIENCY OF EVIDENCE.

In lawyer's action against owner of office building for destruction of valuable papers by janitor, evidence *held* to sustain judgment for $297.50.

5. DAMAGES &#9758;69—DESTRUCTION OF PROPERTY BY FIRE—INTEREST.

A party who recovers damages for destruction of property by fire is entitled to interest on value of property from time of destruction.

6. DAMAGES &#9758;157(4)—PRAYER FOR GENERAL RELIEF.

Where, under facts found, as matter of law plaintiff is entitled to interest as part of his damages, court should grant it to him on prayer for general relief.

Appeal from Jefferson County Court; D. P. Wheat, Judge.

Suit by W. D. Gordon against P. H. Wiess. From judgment for plaintiff, defendant appeals. Affirmed.

Greer & Nall, of Beaumont, for appellant. Thos. J. Baten, of Beaumont, for appellee.

WALKER, J. The following statement of this case is taken from appellant's brief:

"In the petition filed by the plaintiff in the lower court he alleged that about December 26, 1914, he had his offices in the Gilbert Building, which was partly destroyed by fire, and he then rented from defendant three rooms in the V. Wiess Building, known as 207–209–211, at a monthly rental of $50 per month, and about the 1st of January, 1915, moved into said offices his furniture, etc. That among his property there was: An abstract and supplements of land in Liberty county, Tex., consisting of about 150 pages of typewritten matter, of the value of $96; also abstracts of land in Sabine and San Augustine counties, Tex., consisting of something over 100 pages of the value of $75; also 2,000 sheets of letter heads, newly printed, of the value of $15; also 1,000 envelopes of like character, of the value of $4, the same being the stationery of the plaintiff used in connection with the plaintiff's profession as an attorney at law; also 150 printed deposition envelopes of the value of $7.50; and in addition thereto was a large number of title papers and certified copies of title papers affecting sundry tracts of land, and particularly land in the William Donahoe league in Liberty county and the T. J. Harrison league in Hardin county, Tex., of the value of $100—all of which papers and documents were packed in a box and moved into room 211 of said Wiess Building at the time of the plaintiff's removal thereto as above alleged.

"That defendant had a janitor who carried keys to the said offices occupied by the plaintiff, and whose duty it was to care for the rooms of the tenants in the said office building. That although said janitor was duly cautioned that papers and documents of the plaintiff were valuable, and warned not to destroy the same, nevertheless in the absence of the plaintiff he removed box containing papers and documents described in the plaintiff's petition, and threw the same in the furnace and destroyed them.

"That said janitor was defendant's agent, and his action in destroying the papers and documents was gross negligence, thereby rendering the defendant liable to the plaintiff for the value of the papers destroyed.

"That defendant was negligent in providing a janitor who was negligent, incompetent, and careless, thereby bringing about the loss to the plaintiff of the property mentioned in this suit.

"The defendant answered by general demurrer and general denial. Defendant also answered by special plea that had said janitor entered the rooms which were occupied by plaintiff and removed said papers and documents therefrom and destroyed the same, which is not admitted, but denied, then said act in removing and destroying said papers and documents was not done with the authority or consent of this defendant, and said janitor was not at said time acting within the scope of his authority, nor was he acting in the service of this defendant, nor was

---

&#9758;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

he performing any duty for this defendant at said time. That in so removing and destroying said papers and documents, if the same was removed and destroyed, said janitor was acting for his own account outside of the duties he was employed by this defendant, nor was it his duty, nor was he ever permitted by this defendant to remove from plaintiff's office any papers or documents other than those thrown in a wastebasket for the purpose of being removed.

"Thomas J. Baten, a witness for the plaintiff, testified that he was a practicing attorney at law, and was associated with the plaintiff in the practice of law during the year 1914, and he remembered when the plaintiff moved from the Gilbert Building to the V. Wiess Building; that when they moved over they filled up several boxes of stuff, and one box had some abstracts and deeds in it. In straightening up over at the V. Wiess Building the witness had two other boxes that they put a lot of trash in. All of these boxes were in room 211 of the V. Wiess Building. 'The janitor was around about the time they should have closed up, and I told him to take the two boxes of trash and destroy them. I also told him there was a box of valuable stuff in that room. I called him over and showed him the box, so he would not make a mistake. The box of valuable papers was between the other boxes, and to be sure the negro did not make a mistake I took him over and pointed out the three boxes to him, and said: "That box and that box over there are to be destroyed, but this box over here is valuable papers, and you should leave it." After I told him this I went into the other room, and in a few minutes the negro came back very much excited and told me he had made a mistake and burned that box of valuable stuff. The negro took the paper to the dust chute in the building. The paper that is thrown in the dust chute goes to the boiler room. I asked him if there was any chance to recover it, and he said there was no chance, and he begged me to not tell Mr. Wiess, and I did not tell Mr. Wiess for two days.'

"On cross-examination this witness testified: 'I was in the office and pointed out two boxes to the negro to destroy, and also pointed out the one that I told him not to take. He took all three of them and threw them in the waste chute, and told me at once that he had done so. The janitor that burned up those papers in that box was the day janitor. I know that I saw him in the office after that; he was trying to get me not to tell the boss about it, and I heard later that he committed suicide.'

"W. M. Coleman, a witness for the defendant, testified: 'I was employed by Mr. Wiess in the year 1914; when Mr. Wiess was not in the office I looked after the janitors. I gave them instructions as to their duties; and the instructions were: Not to destroy anything in the office unless it was in the wastebasket, or unless the occupant of the office instructed them themselves. Yes, sir; they were instructed not to destroy anything except what was in the baskets. The fellow that you all have described was one of the janitors there in the building. He is also the fellow that committed suicide. Yes, sir; he had the same kind of instructions as the others. The fact is this particular janitor had more specific instructions because he had no business in the office during the day. The duties of the day janitor were to keep the halls, toilets, lobby,

and everything outside of the offices clean. He did not clean up the offices. The day janitor never did go in the offices except when he was capped in by the occupants. He would never move anything except instructed by the occupants. He might go through the offices, to get to the windows to wash them. He was instructed not to clean the offices, and the only time that he went in the offices was when he went through to wash the windows that he could not get to on the outside. Yes, sir; I know all about that paper chute, and where it goes to. It goes to the firing room, and it does not go to the fire box. That paper is used by the fireman in the morning to start a fire with in the boiler. As I stated before, that chute is not connected with the fire box at all.'

"Mr. P. H. Wiess testified: 'I am the owner of the Wiess office building in which Mr. Gordon testified he had his office in December, 1914. That janitor that has been testified to, and having been described as a negro that was crazy and committed suicide, is the same negro that worked as day janitor for me. He is the man in question. He was one of the negro janitors in the building. He was the day janitor, and was on the day roll. His duties were to relieve the elevator boy, clean the halls and cuspidors, and wash the windows in the rooms. Sometimes if the fireman is sick he fires in the fire room. The occupants of the offices called on him pretty much to do something for them, and I tried to keep him out of the offices so he could do the other work. Those janitors had special instructions not to take anything out of a man's office and destroy it unless it was in the waste paper basket. Of course, if the men told them, I have no jurisdiction over them, but I told them not to take anything and destroy it unless it was in the paper basket. This particular janitor in question had the same kind of instructions. I will also describe to the court about the waste chute. It is a chute that we use to throw paper in. On each and every floor there is a door opening into the chute, and when the paper is thrown into the chute it goes down to a half story in the boiler room, and it drops into a galvanized box that is possibly 3x4 feet and maybe a little larger. Everything that is thrown into that chute goes into the boiler room into that box, and the fireman takes it out in the morning and helps make the fire to kinda help boost the fire. That chute is absolutely not connected with the boiler or fire box; you would have to take it out and carry it to the boiler before you could put it in there. The fireman uses all the paper and stuff that is thrown into that chute to kindle the fire with; that is what I told them to use it for. I try to keep bottles and things of that kind out of that chute, for the old negro cut his hand on a bottle that had been thrown into the chute.'

"Cross-examination: 'I don't know a thing in the world about the negro going into your office and getting that box and burning it up. Yes, sir; I heard the testimony of Mr. Coleman about the special instructions given to the negro janitors, and will state that we give them all those instructions to be careful and not take anything except that which is in the paper baskets. This negro's name was Lee, I think, and he has been in my employ, off and on, for five or six years.' Q. And he was in there cleaning up that room that evening, wasn't he? A. No, it wasn't his

duty to be there. If he was in there doing that it was absolutely against my instructions. I haven't any instructions posted up; I don't have to do that; I tell them what their duties are, and they perform them."

The appellant and appellee assign as correct the following proposition of law:

"The master is responsible for the acts of the agent done and performed within the scope of his employment, without regard to the general capacity or incapacity of the agent."

Appellant cites Dillingham v. Russell, 73 Tex. 47, 11 S. W. 139, 3 L. R. A. 634, 15 Am. St. Rep. 753; St. L. S. W. Ry. Co. v. Mayfield, 35 Tex. Civ. App. 82, 79 S. W. 365; Atherton v. K. C. Coal & Coke Co., 106 Mo. App. 591, 81 S. W. 223; Sherwood v. Warner, 27 App. D. C. 64, 4 L. R. A. (N. S.) 651, 7 Ann. Cas. 98; Walker v. Railway Co., 121 Mo. 575, 26 S. W. 360, 24 L. R. A. 363, 42 Am. St. Rep. 547.

Appellee cites the following authorities: 26 Cyc. 1371, 1535; M., K. & T. Ry. Co. v. Freeman, 73 S. W. 544; Dillingham v. Russell, 73 Tex. 51, 11 S. W. 139, 3 L. R. A. 634, 15 Am. St. Rep. 753.

Having agreed on the law, however, they differ as to the application of the same to the particular facts in this case. Appellant's first assignment is as follows:

"That in order for the plaintiff to recover herein it was necessary for him to allege and prove such facts as would show that the wrongful act of the janitor in destroying the papers, the value of which is sought to be recovered in this case, was done while said janitor was in the prosecution of the business of the defendant herein, and, the evidence failing to show this, the court erred in rendering judgment for the plaintiff, and said judgment should have been for the defendant."

[1] We cannot sustain this assignment. Under the facts of this case, this janitor was acting within the scope of his employment at the time he cleaned out appellee's office. Appellant testified:

"I furnished him with pass-keys to all of the rooms. * * * The occupants of the offices called on him pretty much to do something for them."

W. M. Coleman testified that he instructed the janitor not to destroy anything in the office unless it was in the wastebasket or unless the occupant of the office instructed him to do so; that the janitor who destroyed plaintiff's property had the same kind of instructions as the others. "He might go through the offices to get to the windows to wash them, but he was instructed not to clean the offices, and never move anything unless instructed by the occupants." This witness was in the employ of the defendant, and looked after the janitors in the defendant's office building.

From this last statement of this witness, it is clear that it was the duty of this janitor, when instructed to do so by appellee, to clean out his office and to remove this waste paper.

In disposing of this assignment, we also dispose of the second, third, fourth, fifth, sixth, and seventh assignments, as appellant raises the same legal proposition under these assignments.

Appellant's eighth assignment is as follows:

"The court erred in rendering judgment for the plaintiff, because the evidence failed to show that the janitor, whom plaintiff alleges destroyed certain papers, the value of which is sought to be recovered herein, had the implied authority of defendant to remove said papers from the room occupied by plaintiff and destroy the same in such manner as to render the defendant liable for the value thereof."

This assignment cannot be sustained, because under the testimony of W. M. Coleman, above quoted, it was the duty of this janitor to clean out the offices of the tenants, whenever instructed by them so to do.

By his ninth, tenth, and eleventh assignments of error appellant asserts that the court erred in rendering judgment for plaintiff, because the undisputed evidence shows that while plaintiff's papers were thrown in the dust chute in the building in the afternoon, the same were not and could not have been destroyed until the following day, and could have been recovered by plaintiff, and because the undisputed evidence shows that the janitor did not destroy the papers, but if they were destroyed at all, they were subsequently destroyed by the boiler fireman.

The witness Baten testified that after he told the janitor to take the boxes, in a few minutes he came back very much excited, and told him that he had made a mistake and had burned up that box of valuable stuff; that he had thrown them into a chute in the building; that this chute runs to the boiler room, and the stuff that is thrown in there is destroyed below. "I asked him if there was any chance to recover it, and he said that there was no chance, that it was gone, and begged me not to tell Mr. Wiess about it, and I didn't tell Mr. Wiess for two days."

[2] Under this testimony of the witness Baten, the judgment of the court should not be disturbed on these assignments. This janitor was the servant of appellant, and appellee was authorized to act on his statement, and when the janitor told him that the papers were destroyed, it was not the duty of appellee to pursue the inquiry any further.

[3] Under these assignments, appellant asserts the further proposition that appellee was guilty of contributory negligence in not telling appellant of the loss of these papers for two days. This assignment cannot be sustained. As said above, this janitor was the servant of appellant, and appellee was authorized to act on his statements. There was no duty, contractual or otherwise, resting on appellee to make this report to appellant at any particular time, nor did ap-

pellee have notice of any facts that would have caused him to believe that these papers could have been recovered by any action taken by appellant. Appellee did not agree with the janitor to conceal this information from appellant, but simply did not inform appellant of the loss for two days. Where no duty rested on appellee to give this information to appellant within any special time, under the facts in this record, he cannot be guilty of negligence in failing to do so for two days.

[4] By his twelfth assignment of error, appellant complains of the judgment of the court, because there is no evidence establishing plaintiff's damage, and, further, that the court erred in rendering judgment at 6 per cent. interest on the amount of the judgment from January 1, A. D. 1915. The testimony amply sustains the court in rendering judgment for the amount of $297.50.

[5] A party who recovers damages for the destruction of property by fire is entitled to interest on the value of the property from the time of its destruction. T. & P. Ry. Co. v. Tankersley, 63 Tex. 57; G., C. & S. F. Ry. Co. v. Jagoe, 32 S. W. 717. The following rule is announced in Railway v. Horne, 69 Tex. 649, 9 S. W. 442:

"The plaintiff was entitled to interest upon the value of the property destroyed, and the jury were correct in allowing it to him, whether so charged by the court or not. The rule in such cases is the same as in an action of trespass, namely, the value of the property with interest from the date it was lost to the plaintiff. Railway Company v. Joachimi, 58 Tex. 456; Blum v. Merchant, Id. 400."

Under this assignment, appellant makes the following additional proposition:

"Although generally in recovering damages for the negligent burning of property one is entitled to interest from the time of the destruction, he is not entitled to it where his pleading merely asked for the actual value of the property."

Appellant's petition concluded with the following prayer:

"Wherefore, by reason of the premises, the plaintiff has been damaged in the actual sum of $297.50. He therefore brings this suit and prays that the defendant be cited to answer, and on final trial that he have judgment against the defendant for the sum of $297.50, as well as costs of suit, and for general relief."

[6] Where, under the facts found, as a matter of law plaintiff is entitled to interest, the court should grant the same to him on a prayer for general relief. Watkins v. Junker, 90 Tex. 588, 40 S. W. 11; F. W. & D. C. Ry. Co. v. Greathouse, 82 Tex. 111, 17 S. W. 834. In this last case, the court said:

"We think, although there is no pleading asking for interest, that it is proper to allow it in this case on the amount of damages sustained." Railway Co. v. Jackson, 62 Tex. 212.

Finding no error in this record, this case should be affirmed; and it is accordingly so ordered.

On Motion for Rehearing.

Appellant insists in his motion for rehearing that we erred in failing to sustain his twelfth assignment of error, which is as follows:

"Although generally, in recovering damages for the negligent burning of property, one is entitled to interest from the date of destruction, he is not entitled to it where the pleading merely asked for the actual value of the property."

In the original opinion we overruled this proposition, citing Watkins v. Junker, 90 Tex. 588, 40 S. W. 11, and Ft. W. & D. C. Ry. Co. v. Greathouse, 82 Tex. 104, 17 S. W. 834. Appellant insists that these cases were expressly overruled by the Supreme Court in the case of S. A. & A. P. Ry. Co. v. Addison, 96 Tex. 61, 70 S. W. 200. This is not our construction of the Addison Case, nor, as we construe the decisions of our courts, have they held that the Addison Case overruled the cases to which we refer. These cases have been cited frequently by our courts since the decision of the Addison Case.

Appellant relies especially on St. L. & S. W. Ry. Co. of Texas v. Starks, 109 S. W. 1003, to sustain this assignment. In this case Judge Hodges wrote the opinion. The appellee had brought suit against the railway company for $4,000 damages for the destruction of property by fire alleged to have been caused by the negligence of the railway company; $349.15 was claimed for the destruction of personal property, and $3,650.85 for the value of the house burned. On the trial of the case it was agreed that the house was worth $1,200 at the time of the fire. The court instructed the jury to return a verdict for $1,365.60 for the house; he arriving at this amount by adding interest at 6 per cent. per annum from the destruction of the house to the date the judgment was rendered. Judge Hodges said:

"It had been agreed between the attorneys upon the trial that the value of the property destroyed was $1,200; and the court added to this sum interest on that amount calculated at the legal rate from the date of the fire till the time of trial, upon the assumption that the plaintiff, if entitled to a judgment, should, as a matter of law, recover the value of the property together with legal interest from the time of its destruction. There can be no doubt about the correctness of this as an abstract proposition fixing the measure of damages which may, under proper pleadings, be recovered in cases where property is destroyed by fire; but its applicability to any given case must depend upon the state of the pleadings. In the case under consideration the appellee sought to recover only the value of the property destroyed, and in her original petition specified separately the value

of each article of personal property, aggregating $349.15, and also stated separately the value of the house burned at $3,650.85, making a total of $4,000, for which a judgment was asked. In this manner the damages claimed were limited to the actual value of the property lost. Interest upon this value, under this state of the pleadings, could not have been added by the jury or by the court to the amount of her recovery, had it been found that the aggregate value amounted to the full sum sued for. Railway Co. v. Hooser, 44 Tex. Civ. App. 229, 97 S. W. 710; Railway Co. v. Addison, 96 Tex. 61, 70 S. W. 200. Had the pleadings claimed interest specially, or been so drawn as to permit the construction that damages in excess of the actual value of the property was prayed for, then interest might follow as a matter of law. It would not be improper, under such circumstances, for the court to instruct the jury to include such interest in the verdict. We think the charge complained of was error and should not have been given. Any verdict in excess of the actual value of the property destroyed is not in this case supported by the pleadings, and should not have been directed by the court; neither could it have been found by the jury of its own accord had it been submitted as an issue of fact."

In this opinion Judge Hodges recognizes and announces the rule to be that plaintiff could have recovered this interest, if his pleadings had been so drawn as to permit the construction that damages in excess of the actual value of the property was prayed for, saying, "Then interest might follow as a matter of law."

It is not stated in this opinion that appellee prayed for general relief. As we construe the case cited by appellant, it sustains the announcement made by us in overruling this twelfth assignment, in that, where plaintiff is entitled to interest as a matter of law, a prayer for general relief is a sufficient basis for the recovery thereof.

Motion for rehearing overruled.