**SAN ANTONIO & A. P. RY. CO. v. COLLINS.**

No. 9494.

Court of Civil Appeals of Texas. Galveston.

Nov. 26, 1930.

Rehearing Denied Jan. 15, 1931.

Baker, Botts, Parker & Garwood, John T. Garrison, Arterbury & Coolidge, and C. E. Coolidge, all of Houston, for appellant.

Atkinson & Gaugler and Charles Murphy, all of Houston, for appellee.

GRAVES, J.

Appellee, a switchman in its railway yards at Houston, sued appellant for $5,786.64 in damages for breach of a contract of employment between them of date October 15, 1920, alleging that, after remaining in such service from May 4 of 1909, to May 14 of 1921, he was on the latter date unjustly discharged and deprived of his seniority rights, remaining out of its service and without having in the meantime earned any money at other employment, until he was reinstated by appellant on November 3 of 1923, in response to an order to that effect from the United States Labor Board, to whom a mutually voluntary and binding submission of the controversy for decision had been made, which body further directed the payment to him of all sums he would have earned during the period of unemployment, less what he may have otherwise earned during that time; that appellant, while so restoring him to his former position, had refused to comply fully with the Board's order and also pay him for the time he lost, which amounted to 893 days at $6.48 per day, or the total sum stated.

Appellant answered by general and special exceptions, general and special denials, and certain special pleas, the only one of such denials or pleas here pertinent being as follows: "For answer to so much of plaintiff's petition and to his cause of action, if any, as is based on the decision and award of the United States Railroad Labor Board, defend-

ant says, that under the terms of the Transportation Act of 1920, and of the Constitution and laws of the United States, which are hereby invoked, said award and decision of the United Railroad Labor Board is unenforceable either by the Board itself or by this court, and is in no way binding upon this defendant as a matter of law; and in this connection defendant specially denies that it ever agreed with the plaintiff or anyone representing the plaintiff to submit the controversy herein to the United States Railroad Labor Board as an arbitrator, or in any other capacity; and defendant specially denies that it ever agreed with the plaintiff herein, or anyone representing him, to be bound by the decision and award of said United States Railroad Labor Board, but that on the other hand this defendant, when approached by plaintiff and his representative specially refused to join plaintiff in a presentation of the controversy to the United States Railroad Labor Board, and that the plaintiff thereupon submitted the same ex parte to said Board and alone invoked its ruling, and that this defendant appeared at the hearing of the controversy before said Board in response to the citation or invitation of said Board and without any agreement or intention on its part to be finally bound by an adverse decision of said Board, and this defendant stands ready to verify."

Trial before the court without a jury resulted in a judgment for the appellee for the amount claimed, together with 6 per cent. interest thereon from November 3, 1923, to that date, hence this appeal by the railway company.

The learned trial judge filed these findings of fact and conclusions of law:

### "Findings of Fact.

"1. That about May 4th, 1909, plaintiff entered into the employ of the defendant as a switchman in its yards in Houston, Harris County, Texas, and continued to be so employed until May 14th, 1921.

"2. That about October 15, 1920, the defendant entered into an agreement with the representatives of the men employed as switchmen or yardmen on its railroad, and provided therein that no yardman would be taken out of service without just cause and that if he considered his dismissal unjust, he could refer his case to the division superintendent and appeal therefrom to the higher officials; and in case the dismissal is found unjust, the yardman will be reinstated and paid for all time lost.

"3. That about May 14, 1921, plaintiff was taken out of service and immediately took the matter of his dismissal up with the agent, then with the Superintendent, then with the assistant General Manager, who ordered him to return to Houston for service, and when the plaintiff returned to Houston for service he was advised by said assistant General Manager that his prior decision was in error and that the plaintiff could not have employment in Houston but could have employment in Kennedy, or San Antonio, which plaintiff refused to accept.

"4. Plaintiff requested the defendant to join him in a joint submission of the controversy to the United States Labor Board; this defendant refused to do. Whereupon the plaintiff acting through his representative submitted the matter to the United States Labor Board, and the Secretary of said Board, in turn, forwarded a copy of plaintiff's submission to the defendant and inquired as to the desire of the defendant to submit data. This was the first notice defendant had of plaintiff's submitting the matter to the United States Labor Board. The defendant corrected the statement of the representative of plaintiff, and submitted its side of the matter to the United States Labor Board.

"5. There was some correspondence between the representative of plaintiff, the defendant and the Labor Board and the matter was set for hearing and the plaintiff appeared before the Labor Board in person and with his representative, and the defendant likewise appeared before the Labor Board with its general attorneys and Assistant General Manager, and both parties had full hearing and submitted their matters to the Labor Board.

"6. The appearance of the plaintiff and of the defendant was voluntary.

"7. The Labor Board made its decision on October 23, 1923, ordering the plaintiff reinstated, and directing the defendant to pay to the plaintiff all sums which he would have earned, less what he had earned in other employment. On November 3, 1923, the defendant, acting through its First Vice-President and General Manager, advised the plaintiff that he was reinstated to his former position in accordance with the seniority rights under the contract, but that the defendant had no intention of paying for time lost.

"8. The plaintiff was past sixty years of age at the time of his discharge in 1921 and was not able to secure similar or other employment, and his daily wage was Six and 48/100 ($6.48) Dollars for eight hours, and he has lost eight hundred and ninety-three days from the date of his discharge to the date of his reinstatement, a total of Five Thousand Seven Hundred Eighty-six and 64/100 ($5,786.64) Dollars.

"9. Among other provisions of the contract, the plaintiff and all yardmen held rights of seniority, and the plaintiff was displaced by a man many years his junior in service.

"10. The contract of October 15, 1920, executed by the defendant and a representative of its yardmen, was in writing and was for the benefit and on behalf of all of the em-

ployees of the defendant in yard service, and the contract was accepted by the plaintiff and other employees and was observed by them and was likewise accepted by defendant and observed by it, and copies of the contract were furnished each of the employees.

"11. The contract provided that complaints of employees, both in the first instance, and, if the decision of the superintendent was not satisfactory, their appeal to the higher officials of the Company, should be in writing. Plaintiff made no written complaint to the defendant or its officers and was not required by them to make any written complaint and his. oral statement was received and acted upon by the officers as though written complaint had been made and no question for necessity for a written complaint was ever urged by the defendant until the trial of this case.

"12. That there was no complaint about the services of plaintiff, but that they were generally satisfactory and that the plaintiff was continuing to perform his services and would have so continued to perform them during the period of time of his discharge.

"13. That the defendant was not compelled to answer the letters of the Labor Board and was not compelled to submit the matters to the Labor Board, and that there was a matter in controversy between the plaintiff and the defendant on the construction of the contract and its application to the plaintiff, and that matter was submitted by agreement to the Labor Board.

"Conclusions of Law.

"1. From the foregoing facts, I conclude as a matter of law that the contract of October 15, 1920, was for the benefit of the plaintiff and other yardmen and that the plaintiff and the defendant were equally bound thereby, and that the plaintiff would have a cause of action for a breach of the contract and that upon his discharge by the defendant and the refusal of the officers of the defendant to reinstate him, a controversy existed between the plaintiff and the defendant, and the plaintiff had the right to request the defendant to submit the matter to other· people than those called for by the contract, and that when the plaintiff submitted his matter to the United States Labor Board and defendant submitted its side, that the submission was voluntary and both parties, by their submission, agreed to be bound thereby and that the plaintiff was bound thereby and the defendant was likewise so bound.

"2. I further conclude that the defendant was not compelled to submit the matter in controversy to the Labor Board under the terms of its contract but that the ruling of its General Manager would have been binding upon the plaintiff, but that the General Manager and Vice-President and Assistant General Manager, by their actions, expressed a willingness to submit the matter to the Labor Board, and the finding of the Labor Board on the unjustness of the discharge of the plaintiff is binding upon the defendant, and the defendant . likewise accepted. the terms of the award to the extent of ordering the plaintiff reinstated, thus complying with part of the award and refusing only to comply with that part involving the payment of money.

"3. I further conclude that the plaintiff, having made no money for the term of his discharge, was entitled to full payment for the· time lost, together with interest from the date it was due: October 3, 1923."

As its quoted answer below presaged, appellant's main contention in this court also is that the· Labor Board's award or decision is neither enforceable nor binding against it, because, first, that body's action is by law at most only made advisory; second, there was no evidence even tending to show that it ever agreed to arbitrate the matter in dispute at all, or that the Board might act in that capacity, its own appearance and full answer therein before such agency not giving rise to any implication that it had agreed to be bound by any decision the latter might render.

It is further urged: (1) that the question of whether appellee was entitled to be paid for time lost was not submitted to the Board, although attempted to be decided by it; (2) the appellee was in no event entitled to recover more than merely nominal damages for his discharge, because it was undisputably shown that he was on the same day offered other just as remunerative jobs of exactly the same, or similar, nature as the one he was let out of, and that he declined them all, exhibiting on this trial no reasonable ground for such refusal; (3) the allowance of interest on the damages found from the date of their accrual to the date of the trial was improper, because not specifically pleaded.

None of these presentments, we conclude, should be sustained.

We agree with the trial court that, in so far as concerns the resulting legal effect, the voluntary action of appellant in so promptly and fully accepting the Labor Board's implied invitation to appear before and submit data to it in a fully-explained prior submission—initiated by the appellee—of the whole controversy for adjudication there between them, coupled with its subsequent pursuit thereof both through a mutually contested hearing on the merits and a half performance on its own part of the Board's resulting award, was tantamount to an acquiescence in such submission under consent to be bound thereby. Just how it could so put its hand to the plow, take its chances on arbitrament of the whole dispute there—which the action of both parties before. the Board invoked by their mutual reliance on the contract between

them that provided, "in case the dismissal is found to be unjust, the yardman will be re-instated and paid for all time lost"—thereafter acknowledge itself obligated to perform the portion of the resulting award requiring appellee's reinstatement, and yet not be bound on that calling for payment for lost time, does not readily occur to this court. 5 Corpus Juris, top page 23, and footnote 47, also top page 33, and footnote 39.

■ Appellant's theory seems to proceed from a conception that this suit is one upon and to enforce as such a decision of the United States Railroad Labor Board, whereas we think it simply one for breach of the contract of employment declared upon, in which the award of the Labor Board as to its consequences under the facts shown was, in effect, accepted as final and binding; so viewed, since appellant has failed to successfully attack by citing sufficiently contravening evidence any finding of specific facts below, it is in our opinion clearly ruled on the principles of law involved by this court's holding in St. Louis, etc., Ry. Co. v. Booker, 5 S.W.(2d) 856, in which cause writs of error and of certiorari, respectively, were refused in turn by the Supreme Courts of Texas and of the United States, 279 U. S. 852, 49 S. Ct. 348, 73 L. Ed. 995.

■ If, therefore, what was done in this instance amounted to the same thing in ultimate result as an agreement to arbitrate and to abide by the award when made, appellant's refusal to agree in advance to a joint submission to the Labor Board became immaterial.

■ It also follows from the provisions of the contract sued upon, we think, that none of the remaining positions so insisted upon are sound. As stated, both parties in the trial before the board relied on it, and the real issue there determined was that the dismissal had been unjust, whereupon the consequent determination that appellee should both be reinstated and paid for all time lost —less what he may have earned in the interval in other employment—which the undisputed evidence showed was nothing, was but declaratory of its terms. Under that instrument the appellee was a switchman in the yards of appellant at Houston, with his seniority rights in that position there expressly provided for and preserved; hence it was neither a job of exactly the same or a similar nature for the employer—after displacing him there by a younger man, as the trial court found—to offer him a switchman's place at either Kennedy or San Antonio, Tex.; and this, by the undisputed proof, was not only all that was ever tendered to him, but it would have deprived him both of the position and seniority in the Houston yards the contract called for; he was not required

to condone by acceptance thereof such a direct violation of his contractual rights and privileges.

■ As concerns the interest allowance complained of, this being a suit upon "written contracts ascertaining the sum payable" within the meaning of R. S. article 5070, we think the court had authority to add the interest to the amount found to be due as wages, from the time that became payable to the date of the judgment, as a matter of legal right under that statute, the appellee having first sued for the stipulated wages as such and then prayed for general relief. City of Houston v. Lubbock, 35 Tex. Civ. App. 106, 79 S. W. 851; Buffalo v. Stringfellow, 61 Tex. Civ. App. 49, 129 S. W. 1161; Security Realty Co. v. Critchett (Tex. Civ. App.) 206 S. W. 852; Trevathan v. Hall (Tex. Civ. App.) 209 S. W. 447; Wiess v. Gordon (Tex. Civ. App.) 209 S. W. 486.

These conclusions determine the merits of the appeal; they require an affirmance of the trial court's judgment, which, accordingly, will be ordered.

Affirmed.