## GALVESTON, H. & S. A. RY. CO. v. EUBANKS.

### No. 2110.

Court of Civil Appeals of Texas. Beaumont. Oct. 13, 15, 1931.

Rehearing Denied Oct. 21, 1931.

Baker, Botts, Andrews & Wharton, John T. Garrison, and Arterbury & Coolidge, all of Houston, for appellant.

Charles Murphy, of Houston, for appellee.

WALKER, J.

In this suit appellee was plaintiff below, and appellant was defendant. Appellee alleged that he was employed by appellant as brakeman on the 24th day of October, 1920, and was wrongfully discharged on the 25th day of October, 1923; that his employment was subject to the conditions of a contract between appellant and its employees of date 1913, whereby it was agreed that appellee would not be disciplined or discharged without proper cause, and whereby he had the right to appeal from the order of dismissal to appellant's higher officers; that after his discharge he prosecuted his appeal therefrom in the manner provided by the contract of 1913, but his contentions were denied, and appellant refused to reinstate him; he further alleged that in 1922 appellant and the four brotherhoods, the Brotherhood of Locomotive Engineers, the Order of Railway Conductors, the Brotherhood of Locomotive Firemen and Enginemen, the Brotherhood of Railroad Trainmen (appellee belonged to the last named brotherhood), entered into a contract by which appellee had the right to appeal from the final decision of appellant's higher officers, under the contract of 1913, to a "Train Service Board of Adjustment for the Western Region," created by the contract of 1922; that he did so appeal, and that his appeal was fully sustained by the board; that, notwithstanding the final orders of the board, appellant refused to reinstate him. His claim was for damages for time lost from the date of his discharge to the end of his life, as measured by the standard mortality tables.

The substance of appellant's answer was (a) the award of its higher officers was binding upon appellee, and (b) the award of the board, created by the contract of 1922, was void, because the board was without jurisdiction to hear the controversy.

The case was tried to a jury, but, upon conclusion of the evidence, the jury was discharged and judgment entered by the trial court in appellee's favor at the rate of $144 per month from the date of his discharge on October 25, 1923, to the date of the trial, the 18th day of June, 1930, and for twenty-nine years additional time, being appellee's life expectancy from the date of the trial, at the rate of $144 per month. However, on the second item, appellee prayed for only $30,000, and his recovery on that item was limited to that sum. On the first item he was awarded $11,481.20. Against this item, the court refused to allow appellant credit for appellee's earnings as a carpenter from the date of his dismissal to the date of trial. The appeal was duly perfected to the Galveston Court of Civil Appeals and transferred to this court by order of the Supreme Court.

The facts are as follows: Appellee was employed by appellant as brakeman, and discharged on the dates pleaded. The accident, resulting in appellee's discharge occurred on the 11th day of September, 1923, at Schulenburg, a station on appellant's line of railway. On that day, appellee was assigned to the rear end of local train No. 84, which left San Antonio at 7:55 a. m., and arrived at Schulenburg at 8:50 p. m., with nine loaded, and two empty, cars. The usual stop was made on the main track on a 1.22 per cent. ascending grade for the purpose of doing switching on the local yard. The head brakeman and the switch swing brakeman were riding the head end of the train. The conductor and appellee were riding in the caboose. After the train stopped, appellee immediately went back with stop signals to protect the rear end of his train. After the train stopped, the conductor left the caboose and walked towards the head end of the train. After appellee left the train, the engine and three cars were cut loose from the other cars. The engineer, his fireman, and the two other brakemen rode the engine and the three cars that had been cut from the train to the compress track for switching purposes. When appellee's train No. 84 stopped at Schulenburg, train No. 246, a superior train, traveling closely behind appellee's train and in the same direction, was past due at Schulenburg, which facts appellee knew. During the progress of the switching work, and after about twenty minutes delay, the engine returned from the compress to the main track with a cut of cars, and backed up against the cars left standing on the main track. Because the coupling failed to make, the rear portion of the train was started down grade, running a distance of about two miles before coming to a stop. The runaway would have been avoided had a sufficient number of hand brakes been set on the rear end of the train.

It was shown without dispute that appellee left his train without setting any hand brakes on the rear end thereof. The charge upon which he was dismissed was worded as follows: "Failing to set hand brakes on rear portion of his train which was left standing on an ascending grade, and responsibility for part of his train getting away at Schulenburg, Texas, September 11, 1923."

Article 32 of the 1913 contract is as follows: "No trainman will be disciplined or discharged without proper cause, and if a trainman accepts his time when discharged, he does not forfeit his right to make a grievance, within the prescribed limit. Trainman taken out of the service or otherwise disciplined shall be given a hearing by proper division officers as early as possible, after request in writing, and decision will be promptly rendered. Trainman will have the right to be accompanied or represented by one or more trainmen in the Company's employ or the regular Committee of the Organization, and have the right to appeal to higher officers of the Company, in case decision is unsatisfac-

tory. Notice of appeal must be given within sixty days after decision is rendered. Officers to whom cases are appealed will give a hearing and decision as early as possible. If dismissal is found unjust, trainman will be reinstated and paid for all time lost. Trainman charged with offenses involving either discipline or dismissal will be advised of the offense in writing, and all parties concerned may be present at the investigation, if the accused so desires. In so far as it can be done legally, transportation over the lines of these Companies will be furnished employees upon request, for the purpose of securing evidence concerning grievances, or to reach the General Officials."

Appellant's operating rules, to which appellee was subject, material to this case, are as follows:

"Rule 47. When a freight train is standing on a grade where it is necessary to keep the brakes applied, hand brakes must be set and straight air brake applied on locomotive or locomotives, then the automatic brake released so as to have train charged to maximum brake pipe pressure before starting. When train is standing on descending grade, hand brakes must be set on head end, and when on ascending grade, hand brakes must be set on rear end."

"Rule 99. When a train stops under circumstances in which it may be overtaken by another train, the flagman must go back immediately with flagman's signals a sufficient distance to insure full protection. One-fourth of a mile from the rear of the train, he will place one torpedo on the rail; continuing back one-half mile from the rear of the train, he will place two torpedoes on the rail, two rail lengths apart. He may then return to the single torpedo, where he must remain until relieved by another flagman or is recalled by the whistle of his engine. When recalled if he does not see or hear an approaching train, the single torpedo will be removed, and not before. By night, or by day when conditions warrant, a lighted fusee will be displayed to protect his train while returning."

"Rule 843. On grades when engines are cut off at stations to do work or at any stop of unusual length, the air must be released and a sufficient number of hand brakes set to hold the train. Both conductor and enginemen will be held responsible for compliance with this rule."

Appellee was discharged for failing to obey rule No. 843, and duly prosecuted his appeal from the order of discharge to appellant's "higher officers," under the procedure provided for by article 32, who refused to sustain his grievance. He then perfected his appeal to the board, as created by the 1922 contract. The material portions of that contract are as follows:

"1. That all disputes growing out of personal grievances or out of the interpretation or application of the schedules, agreements or practices now, or hereafter established on the railroad signatory hereto, which cannot be adjusted by direct conference between representatives of the individual railroad and its respective employees shall be disposed of in the following manner.

"2. There shall be created as soon as practicable a Railroad Board of Adjustment to be known as 'Train Service Board of Adjustment for the Western Region' (hereinafter referred to as the Board) to consist of eight members; four to be selected by the said railroads and one each by the chief executive officer of each of the four organizations of employees, hereinbefore named.

"17. No dispute shall be considered by the Board except those with respect to matters covered by Section 1 of this agreement and which have arisen out of occurrences subsequent to October 1, 1921, and are now pending, or may hereafter arise.

"All disputes arising out of proposed changes in rules, working conditions or rates of pay are specifically excluded from the jurisdiction of the Board.

"The Board shall not assess punishment or change the discipline administered. In the determination of disputes involving personal grievances the decision of the Board shall be limited to the guilt or innocence of employees as charged."

In his complaint to the board, appellee submitted the facts of the accident and his construction of the contract of 1913, and of appellant's operating rules, together with a request that the board find that he was unjustly discharged. He also stated that he would expect pay as provided by article 32, if it was found that his dismissal was unjust. Appellant refused to make a joint submission, but made an independent statement of the facts, substantially as we have stated them above. It also protested the jurisdiction of the board to entertain appellee's grievance, and stated to the board that it had no jurisdiction, except to determine whether or not appellee set the hand brakes on the rear end of his train before leaving to protect it from the approaching train, and further stated that, since appellee conceded this fact, the board had no jurisdiction, except to return a verdict of guilty as charged. Upon this submission, the board entered the following decree, on the 8th of March, 1926: "Decision: In view of the facts involved in this case, this claim is sustained."

Appellant wrote to the board protesting the legality of the award, on the ground that it was beyond the board's jurisdiction, and stated to the board that it would not recognize the award. Appellee also wrote the board that appellant refused to recognize the deci-

sion to reinstate him, and filed with the board a supplemental claim asking that it determine his guilt or innocence, as charged. Appellant was not served with notice of this supplemental claim. With this correspondence before it, the board entered an addenda decision on the 7th day of July, 1926, to the effect that its decision of March 8, 1926 "should be understood as expressing the intent of the Board that Brakeman Eubanks was not guilty." After this last award was made, appellant again protested it as void. On the 30th of November, 1926, the board reopened the claim by the following order: "Board's docket No. twenty three sixty four now assigned to Eubanks case and will be heard with others set for next week based entirely upon the provisions of article thirty two."

Under that order, a new submission was had and another decree was entered, as follows: "Decision: In the opinion of the board decision No. 1876 (referring to the original decision copied above), and addenda issued by the board dated July 12, 1926, implied that article 32 of schedule should be applied. The board, therefore, sustains the claim."

That was the final award by the board. Appellant again protested its validity.

## Opinion.

■ The jurisdiction of the board to entertain appellee's grievance is the first question in this case; for, if the board had no jurisdiction, under St. Louis, B. & M. Railway Co. v. Booker (Tex. Civ. App.) 5 S.W.(2d) 856, the award of appellant's "higher officers," made under article 32 of the 1913 contract, was binding upon appellee, and the court erred in refusing to instruct a verdict in its favor. But if the board had jurisdiction, appellee had a cause of action for his damages.

It is the contention of appellant that the board had jurisdiction only to the extent of determining whether or not appellee set the hand brakes on the rear end of his train, and, since that fact was admitted, the board was compelled, as a matter of law, to find that he was guilty as charged. On the other hand, it is the contention of appellee that the board had jurisdiction to construe the 1913 contract and the operating rules, which he was compelled to obey, and to determine, under all the facts in the record, his guilt or innocence as charged; that is, whether or not in failing to set the hand brakes he had breached a duty owed by him to appellant.

Section 1 of the 1922 agreement expressly gave the board jurisdiction over all disputes growing out of personal grievances, and the interpretation and application of the "schedules," "agreements," and practices regulating and controlling appellee's employment with appellant. Appellee's difference with appellant was "a personal grievance." The 1913 contract and appellant's operating rules fall within the terms "schedules" and "agreements," as used in section 1 of the 1922 contract. Appellee's personal grievance was a dispute growing out of the "interpretation" and application of the operating rules, and of article 32 of the 1913 contract. Thus it is clear, under this analysis of the operating rules and the two contracts, that the board had jurisdiction to decide the dispute between appellant and appellee. But appellant says this proposition is not sound because by section 17 the board was expressly denied jurisdiction of proposed changes in rules, working conditions, and rates of pay, and was without power to assess punishment or change the discipline administered. Appellee's grievance involved none of these issues. He merely asked the board to find that he was unjustly discharged, which, under the facts of this case, presented the same issues as if he had asked the board to determine his guilt or innocence. It is true that he also stated in his application that if the finding was in his favor he would "expect" pay for time lost, as provided by article 32 of the 1913 contract. That request did not invoke the power of the board to do anything. It was nothing more than a statement by appellee of his legal rights if the controversy was decided in his favor, for, under article 32, a favorable finding entitled him to pay for "all time lost." Again, appellant says the board had no power, under section 17, except to determine the guilt or innocence of appellee as charged, and, since he admitted that he did not set the hand brakes, the board was compelled, as a matter of law, to find him guilty. This proposition is not a correct construction of the contracts and operating rules. Section 17, by granting the board authority to determine the guilt or innocence of an employee, gave it jurisdiction to construe and interpret the contracts and operating rules, and to find whether or not these rules had been violated by the employee. The employee's guilt or innocence would not be determined by a mere finding that he did or did not do the specific act charged against him, for, if he had violated no duty owed by him to his employer, he would be entitled to a verdict of not guilty. So, in this case, though appellee admitted he failed to set the hand brakes, if, on all the facts, it was not his duty to set the hand brakes before going back to guard the rear end of his train, he was not guilty as charged. On the facts of this case, we think the board had jurisdiction to render its first decision of March 8, 1926, sustaining appellee's claim. Had no protest been made against that decision, appellee's rights thereunder would have dated from March 8, 1926. But appellant entered its protest, denying the jurisdiction of the board and refusing to give it effect, and ap-

pellee answered that protest, thereby suspending the operation of the order of March 8th. Following that order, on the 12th of July, the board entered its addenda decision, to the effect that by the decree of March 8th it intended to find that appellee "was not guilty." Had no protest been made against the addenda decision, appellee's rights thereunder would have dated from July 12, 1926. But the act of appellant, in protesting its validity, and of appellee, in resubmitting his grievance, again suspended the operation of the order of March 8th, and it did not go into effect until the board made its final order on February 18, 1927, giving its two preceding orders a definite construction, and fully sustaining appellee's contention that he had been unjustly discharged. As the final award was in appellee's favor, and as appellant refused to recognize its validity and to reinstate him and to pay him for "all time lost," as provided by article 32 of the 1913 agreement, appellee had a cause of action against appellant as for breach of contract of employment. On this statement of the case, appellant was not entitled to an instructed verdict.

The next important question is appellee's proper measure of damages. When a contract of employment is broken by the master without fault of the servant, the servant's cause of action is not for the wages contracted for, but for damages for breach of contract. Our courts say, in such cases, that there is no difficulty in defining the cause of action and the date of its accrual, but in determining the proper measure of damages. In Litchenstein v. Brooks, 75 Tex. 196, 12 S. W. 975, discussing the servant's right to recover against his master for breach of contract of employment, our Supreme Court said: "There is but one cause of action, and only one suit can be brought. That may be brought at any time before the cause of action is barred by the statute of limitations, either immediately or after the expiration of the time that the contract was made for. In either case no more damages can be recovered than have accrued at the trial."

On this same proposition, Mr. Chief Justice Jones, speaking for the Dallas Court of Civil Appeals, in Southern Properties, Inc. v. Carpenter, 300 S. W. 963, 964, said: "It has been uniformly held by our courts that, in a suit filed by the discharged employee previous to the expiration of the contract time, he can only recover damages for the period of time from his discharge to the trial of his case, and that, if he elects to go to trial of his case before his entire damages can be ascertained, he waives damages for the period of time following the trial. Litchenstein v. Brooks, 75 Tex. 196, 12 S. W. 975; Louisiana Rio Grande Canal Co. v. Quinn (Tex. Civ. App.) 161 S. W. 375; Weber Gas & Gasoline Engine Co. v. Bradford, 34 Tex. Civ. App. 543, 79 S. W. 46; Pacific Express Co. v. Walters, 42 Tex. Civ. App. 355, 93 S. W. 497."

In Golden Rod Mills v. Green, 230 S. W. 1089, 1092, the San Antonio Court of Civil Appeals, citing the Brooks Case on this proposition, said: "There can be no recovery in such cases for damages beyond the time of the trial."

Under the authorities cited, appellee had a cause of action against appellant for refusing to reinstate him in his employment, but could not recover damages beyond the date of the trial of his case in district court. His measure of damages from the date of the final award to date of final judgment in district court herein will be the difference between what he would have earned under his contract with appellant and what he may earn in the exercise of ordinary diligence in some other employment. Announcing this measure of damages, our Supreme Court said, in the Brooks Case, supra: "It is the duty of the injured party to find other employment if he can, and if he succeeds the amount of his damages will be reduced by the amount earned in the new employment."

Because article 32 of the 1913 contract expressly provided that appellee, if his dismissal was unjust, should have pay "for all time lost," he insists that the general rule does not constitute his measure of damages covering the period of time from the date of his discharge to the date of the final order. We have found no decision construing the language pay "for all time lost" as constituting a limitation upon the general rule. But the facts of San Antonio & A. P. Railway Co. v. Collins (Tex. Civ. App.) 35 S.W.(2d) 507, involved a construction of this language by the United States Railway Labor Board. In that case, it appears that a switchman appealed for relief against his dismissal to the United States Railway Labor Board, which sustained his appeal. The employee's contract provided, as does appellee's contract, that, if the dismissal was unjust, he was entitled to be reinstated and paid "for all time lost." The Labor Board made its decision ordering the switchman reinstated, and directing the railway company to pay him all sums which he would have earned, less what he would have earned in other employment. We believe the United States Railway Labor Board correctly construed this language. The provision, pay "for all time lost," means nothing more than pay for loss of earnings.

In the trial of this case in the court below, when the judge announced his decision to take the case from the jury and to enter judgment in appellee's favor, appellant, at that time, reserved no exceptions to the rulings of the court in dismissing the jury, but duly excepted in his motion for new trial.

Because appellant failed to except at the time the court discharged the jury, appellee insists that error cannot now be predicated upon the rulings of the court in discharging the jury, nor upon the findings of the court assessing damages in appellee's favor. This contention is overruled. This identical proposition was before the Commission of Appeals in Korn v. Korn, 15 S.W.(2d) 1017, where it was held, quoting second syllabus: "Action of trial court in withdrawing case from jury in suit involving issue of husband's fraudulent conveyance of homestead held reviewable on appeal, notwithstanding defendant's failure to take exceptions to court's action, where objection thereto was made in motion for new trial, since result of withdrawing case from jury is equivalent to giving peremptory instruction."

We also sustain appellant's contention that the court erred in fixing, as a matter of law, appellee's monthly compensation at $144. Appellee was an extra brakeman; his contract did not provide him with regular employment; he worked only when he was called out for service. During the six months preceding his discharge, he earned the following amounts:

"April, 1923...................$137.22
May      "   ..................... 70.44
June     "   ..................... 61.65
July     "   ..................... 179.42
August   "   ..................... 195.13
Sep.     "   ..................... 166.85
Oct.     "   ..................... 123.40"

On these facts, appellee's compensation from the time he was discharged to the date of the final trial of this cause will be a question for the jury.

For the errors discussed, the judgment of the lower court is reversed, and this cause remanded for a new trial.